522 P.2d 562

**Michael E. SEPO and Marie A. Sepo, his wife, Appellants,**

v.

**FIRST NATIONAL BANK OF ARIZONA, a national banking association, Appellee.**

**No. I CA–CIV 2120.**

Court of Appeals of Arizona, Division 1, Department A.

May 21, 1974.

Rehearing Denied July 24, 1974.

Review Denied Sept. 19, 1974.

---

Rawlins, Ellis, Burrus & Kiewit by Chester J. Peterson, Phoenix, for appellants.

Streich, Lang, Weeks, Cardon & French by Dan M. Durrant, Phoenix, for appellee.

## OPINION

STEVENS, Judge.

This is a suit by First National Bank of Arizona (hereinafter "bank") to collect on a note made by Mr. and Mrs. Michael E. Sepo (hereinafter Sepos) and to foreclose its lien on the property whose purchase price the mortgage secured. The question presented on appeal is whether the Sepos raised questions of fact sufficient to preclude the granting of the bank's motion for summary judgment.

The property in question is Lot #465 Valley Vista Unit Four B, located in Maricopa County. The land is part of an area which, in its undeveloped state, was owned by one Ralph Eaton. Eaton was approached by Jerry Sterrer, a contractor, and entered into an agreement with him to develop the land as a subdivision contingent on obtaining financing. Sterrer approached the bank, where Eaton was a depositor, to obtain financing for the project. After investigating Sterrer's financial status and examining the plans for the project, the bank entered into an agreement to finance aspects of the project. The bank arranged to obtain approval of the project from the Veterans Administration for the purpose of obtaining mortgage insurance for the buyers of the individual houses. The bank reviewed the terms of the trust into which Eaton agreed to place the land. The bank agreed to take an assignement from Sterrer of a portion of his rights under each home sales contract approved by the bank and pay the proper amount into the trust so that each lot would be released to the builder as he was prepared to build a home on it.

The Sepos entered into an agreement with Sterrer Enterprises that Sterrer would construct a house for them, in accordance with certain plans and specifica-

tions. The parties signed a real estate contract to that effect on 2 August 1969. The Sepos sought financing for the home from the bank. Their transactions with the bank were recorded on forms provided by the bank. The first was entitled an Offer of Commitment, whereby the bank offered to loan $19,476 to the Sepos at 7½% per annum for 29 years, "upon the following terms and conditions:

"1. That such loan is developed according to our instructions and requirements and in compliance with any governmental laws, regulations or ordinances which may apply.

"2. That if any construction work is involved, all materials, equipment, labor, capital and cash requirements are or will be readily available as represented by mortgagor(s) and as required to promptly and satisfactorily complete all buildings and other improvements according to approved plans and specifications, construction and installation contracts.

"3. Compliance with all requirements of Federal Housing Administration, including conditions outlined in FHA Commitment, copy of which is attached hereto and made a part hereof. (This paragraph applies only where an FHA commitment has been obtained.)

"4. Sterrer Enterprise will furnish First National Bank of Arizona with a completion bond.

"5. Sterrer Enterprise will keep books on this project, which books will be at all times current and available for inspection.

"6. That all construction will be completed to our satisfaction on or before March 17, 1970.

"Subject to compliance with all conditions and requirements, we will make advances during the course of construction in the amounts indicated at the following stages of construction provided such amounts as may be necessary or required by us to be advanced by mortgagor(s) are also made available for disbursement:

$3,895.00 on completion of floors and rough plumbing

$3,895.00 on completion of second inspection

$3,895.00 when drywall in

$3,895.00 when ready for painting

$3,896.00 on completion

LAST DRAW TO TITLE COMPANY"

This offer of commitment was presented to the Sepos together with a form prepared by the bank entitled Acceptance of Commitment, which specified costs to be assumed by the Sepos in conjunction with the interim financing. These costs were specifically listed: (1) the costs of assuring title; (2) a survey; (3) an appraisal; (4) photographs and (5) fire insurance. The acceptance also contains an appointment prepared by the bank specifying Sterrer Enterprises to be the agent of the Sepos for the purpose of receiving the loan proceeds.

Appearing under the same date as the offer and the acceptance of commitment is a mortgage note, incorporating into the long-term financing the amounts loaned during the construction of the house. The date upon which the first payment was to become due was left blank. Accompanying the mortgage note was an authorization to the bank to insert the due date of the first installment payment following the final disbursement of loan proceeds, but in no event would the due date of the first installment be later than one year after the making of the note.

Construction was begun on the house. The Sepos regularly visited the construction site. They became apprehensive about long delays in the work on their house, and contacted the bank beginning prior to 22 December 1969, asking that the bank look into the matter before disbursing further funds. The bank assured them that the work was progressing satisfactorily. The bank continued to make progress payments as they were requested by Sterrer Enterprises. The Sepos persisted in their re-

quests that the bank investigate the situation, to no avail.

The bank did not check to determine whether the amounts paid to Sterrer Enterprises were applied to the Sepo house. The bank never discussed the problems raised by the Sepos with Sterrer Enterprises. The bank never physically inspected Sterrer's books to ascertain the status of the house. By 17 February 1970 suppliers were refusing to deliver goods on other than a cash-on-delivery basis, which was known to the bank. The bank received similar calls from other houseowners but elected to continue payments of the money to Sterrer Enterprises. The bank made these payments to Sterrer Enterprises without investigating the quality of the work performed beyond the literal requirements of the financing agreements, and without exercising the rights of inspection which it had reserved to itself in the agreements. Sterrer Enterprises was unable to complete the Sepo home. The bank did not have funds remaining in its account sufficient to complete the Sepo home. One year after the Sepos signed the mortgage note, the bank demanded payment of the amount due. When the Sepos refused, the bank sued on the note and to foreclose the mortgage. The Sepos answered, alleging failure of consideration and filed a counterclaim based on the bank's allegedly negligent disbursement of their money. The trial court granted summary judgment in favor of the bank on the foreclosure action and a jury trial was had on several issues raised on the counterclaim. The Sepos were awarded $1,750. From these judgments the Sepos appeal.

The Sepos' answer to the bank's mortgage foreclosure action admits the note and mortgage and raises as an affirmative defense a complete or partial failure of consideration. "Failure of consideration * * * consists in failure to perform, or carry out, or make good a promise given as consideration for an instrument. Whether or not a failure of consideration has occurred may be a question of fact for a jury to determine."

" * * * where several promises are made by one party the question whether breach of one such promise results in a complete or a partial failure of consideration, or no failure at all, is determined under the doctrine of substantial performance." 11 Am.Jur.2d Bills and Notes § 244, pp. 274–275. The parties raising the defense of failure of consideration with reference to a note have the burden of proving it. Walton v. Hager, 13 Ariz.App. 520, 478 P.2d 135 (1970). In Weber v. Bates, 3 Ariz.App. 420, 415 P.2d 135 (1966), this Court examined the following factors in testing whether consideration for a note was received by the maker: (1) who had access to the account in which the note's proceeds were placed; (2) for what purpose were the funds placed in the account and (3) for whose benefit were the funds ultimately expended.

It appears that funds were never placed under the control of the Sepos, in an account or otherwise. Their control over the money was limited to their contractual rights allowing the bank to disburse the funds under the "terms and conditions" set forth in the Offer and Acceptance Commitment. The trial court ruled that the requirement of a completion bond from Sterrer Enterprises to the bank was a condition precedent, but that the bank had the power to waive since it would have been made solely for its benefit. Whether the completion bond was a "term" of the contract and part of the bargained for exchange, or a "condition" which had to exist before the contract became binding is not clear. The trial court found it to be a condition precedent, and we accept that determination for the purposes of our analysis.

In Tuscon Federal Savings v. Sundell, 11 Ariz.App. 372, 464 P.2d 818 (1970), vacated on other grounds, 106 Ariz. 137, 472 P.2d 6 (1970), a home buyer and a builder entered into a contract which allowed the home buyer to receive a refund of moneys advanced if FHA–VA financing were not obtained. The contract also allowed the builder to mortgage the property to obtain interim financing. The FHA–VA financ-

ing was not obtained, but the builder proceeded to mortgage the property and build the house. The buyer obtained other financing, and subsequently performed under the contract. In attempting to invalidate the mortgage placed on the land by the builder, the buyer argued that since FHA–VA financing was a condition precedent to her performance under the contract and since she obtained no FHA–VA financing, the builder's mortgage pursuant to the contract was of no effect. The Court of Appeals held that since the condition was solely for her benefit, and having chosen to perform under the contract, she could not later attempt to invalidate the contract on the basis of a condition precedent which she waived.

The case at hand presents a different situation. The bond recited in the offer is not an indemnity bond to compensate only the bank for the losses suffered by Sterrer Enterprises' failure to complete the building. It is a bond which would guarantee the completion of a building in which the Sepos had an executory interest.[1] If such a bond had been obtained, the Sepos and the bank would have had a fund from which to complete the construction. The Sepos would have had an equitable interest in that fund. Restatement, Restitution § 125(2), Comment (b). We hold that the condition precedent of supplying the completion bond was for the mutual benefit of the parties and could not be waived by the bank without notice to the Sepos, and that the bank's unilateral "waiver"

substantially vitiated the consideration to be received by the Sepos for their note.

■ Another aspect of the failure of consideration analysis set out in Weber v. Bates, supra, is whether the funds were disbursed to the maker or his agent. Sterrer Enterprises on the forms provided by the bank was appointed to be the Sepos' agent for the purposes of disbursal of funds. However, the evidence shows that prior to 22 December 1969 the Sepos were urging the bank to investigate the manner in which Sterrer Enterprises was proceeding on their house. It appears that the effect of the Sepos warnings may have been to qualify their previous express authorization for the bank to make payments to Sterrer Enterprises. Disbursements made to agents acting outside their authority are not made for the benefit of the maker, and could constitute a failure of consideration for the maker's note. See Bank of Douglas v. Robinson, 78 Ariz. 231, 278 P.2d 417 (1954). See also Hammons v. O'Brien, 32 Ariz. 436, 259 P. 881 (1927).

■ We believe that issues of fact concerning the defense of failure of consideration sufficient to preclude the granting of the bank's motion for summary judgment were properly before the Court.

The summary judgment in favor of the bank is reversed and the Sepos are granted a new trial on their counterclaim.

DONOFRIO, P. J., and OGG, J., concur.

---

1. Sterrer Enterprises provided the Sepos with a "warranty" that the building would be constructed in substantial conformity with the plans recited in the sales agreement. It incurs no fresh obligations on the part of Sterrer Enterprises, and cannot be considered a completion bond.