541 P.2d 1160

**Michael E. SEPO and Marie A. Sepo, his wife, Petitioners,**

v.

**The Honorable Williby E. CASE, Jr., Judge of the Superior Court of Maricopa County, State of Arizona, Division 26; and the FIRST NATIONAL BANK OF ARIZONA, a National Banking Association, Real Party In Interest, Respondents.**

**No. I CA–CIV 3172.**

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 6, 1975.

Rehearing Denied Dec. 11, 1975.

Review Denied Jan. 13, 1976.

Rawlins, Ellis, Burrus & Kiewitt, by Chester J. Peterson, Phoenix, for the petitioners.

Streich, Lang, Weeks, Cardon & French, by Dan M. Durrant, Phoenix, for the First National Bank of Arizona.

## OPINION

STEVENS, Judge, Retired.[1]

This special action has been presented to this Court following the entry of a summary judgment, being the third summary judgment in this litigation. The summary judgment here in question was preceded by an opinion of this Court and by an order in a subsequent special action which order is entitled "Prior Opinion Clarified."

The opinion is the case of *Sepo v. First National Bank of Arizona*, 21 Ariz.App. 606, 522 P.2d 562 (1974), petition for review denied, Arizona Supreme Court cause number 11652–PR. The prior special action was determined by a memorandum decision in which Michael E. Sepo and Marie A. Sepo (Sepo) were the petitioners and the First National Bank of Arizona (Bank) was the respondent-real party in interest. The cause number is 1 CA–CIV 3068. The memorandum decision was filed on 22 May 1975 and will be hereinafter quoted in full. No motion for rehearing was directed to the memorandum decision and it became final. In fact, the Sepos and the Bank filed their separate motions with the trial court within days following the filing of the memorandum decision.

## THE BACKGROUND

We refer to the above cited 1974 opinion for the background of this litigation. Since vital rulings were entered by summary judgment, "the facts" which we set forth herein have not been determined by a trial of the issues and are subject to proof on such a trial. "The facts" are sufficiently established to render summary judgment inappropriate under Rule 56, Rules of Civil Procedure, 16 A.R.S.

Briefly, Eaton established a subdivision trust with release prices for the various lots. Sterrer was a contractor who desired to improve the lots. Sterrer arranged with the Bank for financing. Sepo entered into an agreement with Sterrer to build a house and paid the release price in a sum in excess of $5,500 to the trust securing sufficient title to enable Sepo to secure mortgage construction financing from the Bank. There were specified time release payments to be made by the Bank to Sterrer and the Bank required that the Sepos constitute Sterrer their agent for the purpose of securing periodic draws as progress payments. This aspect of the case is considered in our opinion. Sepos became apprehensive concerning the progress of the construction of their house and complained to the Bank that the construction was not progressing properly and the Bank nevertheless continued to pay draws to Sterrer. Before the full amount of the mortgage had been drawn by Sterrer, Sterrer was unable to complete the house.

The Bank sued on the note and to foreclose the mortgage in February 1971. The Sepos defended and asserted a counterclaim. The Bank received a summary judgment of foreclosure. The trial court drastically limited the issues to be tried on the counterclaim and the Sepos recovered a judgment of $1,750 on their counterclaim.

The judgment of foreclosure and the judgment in favor of the Sepos were entered February and March of 1972. (These dates are stated as approximate dates as the original Superior Court record is not now before this Court.) There was a timely appeal by the Sepos from both judgments without the posting of a supersedeas bond. On 5 December 1972 the Bank sold the property in question to third parties, who are not parties to this litigation, for $15,000.

This Court rendered its opinion on the appeal on 21 May 1974 and, following the Supreme Court's denial of the petition for review, issued its mandate on 11 December 1974. By its opinion this Court set aside the summary judgment of foreclosure and without specifying the details of the error in the restricting of the Sepo proof of

---

1. The Honorable Henry S. Stevens, Judge of the Court of Appeals, retired, was called to sit in this case.

their counterclaim, granted the Sepos a new trial thereon.

As recited in the opinion, the Sepos and the Bank early in their relationship entered into an "Offer of Commitment" one portion thereof reading as follows:

"4. Sterrer Enterprise will furnish First National Bank of Arizona with a completion bond."

Unilaterally, and without the knowledge of the Sepos, the Bank did not require Sterrer to comply with this provision of the offer of commitment. In our opinion we stated:

"The trial court found it (the above quoted paragraph) to be a condition precedent, and we accept that determination for the purposes of our analysis." 21 Ariz.App. at 609, 522 P.2d at 565.

We further stated:

"The bond recited in the offer is not an indemnity bond to compensate only the bank for the losses suffered by Sterrer Enterprises' failure to complete the building. It is a bond which would guarantee the completion of a building in which the Sepos had an executory interest. If such a bond had been obtained, the Sepos and the bank would have had a fund from which to complete the construction. The Sepos would have had an equitable interest in that fund. Restatement, Restitution § 125(2), Comment (b). We hold that the condition precedent of supplying the completion bond was for the mutual benefit of the parties and could not be waived by the bank without notice to the Sepos, and that the bank's unilateral 'waiver' substantially vitiated the consideration to be received by the Sepos for their *note*." (Emphasis added. Footnote omitted) 21 Ariz.App. at 610, 522 P.2d at 566.

After the mandate there was limited discovery by both parties. This discovery disclosed the 5 December 1972 sale by the Bank. We find the following question by the Bank and Sepo answer.

"(Question) (a) Whether you claim that the provision in the Construction Loan Agreement respecting a completion bond was a 'mutual condition precedent':

"(Answer) Defendants' position is the same as that expressed by the Appellate Court, to-wit: That the requirement for a completion bond was a 'condition precedent . . . for the mutual benefit of the parties and could not be waived by the Bank without notice to the Sepos, and that the Bank's unilateral "waiver" substantially vitiated the consideration to be received by the Sepos for their note.' "

The Bank, persuading the trial court to enter a summary judgment in its favor against the various itemized claims of the Sepos, set forth in other answers to the Bank's interrogatories, placed great reliance on that portion of our opinion quoted above from 21 Ariz.App. at 609, 522 P.2d 562 and the above Sepo answer to the Bank's interrogatory.

This action by the trial court was the subject of the first special action, cause number 1 CA-CIV 3068. As we stated earlier we rendered a memorandum decision on 22 May 1975 which we now quote in full.

"This litigation is before this Court for the second time. *See Sepo v. First National Bank of Arizona*, 21 Ariz.App. 606, 522 P.2d 562 (1974) (review denied). The same will be referred to as the 'Sepo decision.'

"After the mandate issued following the rendition of the Sepo decision the case was assigned to The Honorable Williby E. Case, Jr., Judge of the Superior Court for Maricopa County. Limited discovery was undertaken by both the Sepos and the Bank. The Bank answered a Sepo interrogatory stating that on 5 December 1972 it had sold the property in question at a private sale for $15,000. Without objection on the part of the Sepos, the trial court granted the Bank's motion to

dismiss its complaint being a complaint wherein the Bank sought to recover on the Sepos' note and to foreclose the Sepos' mortgage. This left the original Sepo counterclaim without a disposition thereof transposing the Sepos to the position of being the plaintiffs and the Bank to the position of being the defendant.

"In their answers to the Bank's interrogatories the Sepos outlined the monetary aspects of their claim against the Bank which included the original payment made by the Sepos to secure the release of the real property from the Eaton Trust. The Sepos further answered that they relied on the Sepo decision. The Bank filed a motion for summary judgment seeking a dismissal of the Sepo claim against the Bank. The trial court granted the motion at the same time that it entered the order dismissing the Bank's suit to recover on the note and to foreclose the mortgage. No issue is presented to this Court in releation to the dismissal of the complaint which was filed by the Bank.

"The Sepos then commenced the current special action seeking relief on the basis that the trial court had misapplied the Sepo decision.

"In the Sepo decision this Court reversed the earlier limited money judgment in favor of the Sepos and against the Bank for 'a new trial on their counterclaim.' This did not preclude appropraite procedures following this Court's mandate including the entertaining of an appropriate motion for summary judgment. The misapplication of the trial court appears to be that the trial court considered our opinion to hold that there was a failure of consideration for the contract entitled 'offer of commitment' and that that failure terminated all rights of the Sepos to recover damages for the alleged breach of that contract. This Court did not so hold. This Court held that the Bank's breach of the offer of commitment contract created factual issues on the question of the failure of consideration for the note and mortgage, issues of such proportions as to render the enforcement of the note and mortgage by summary judgment inappropriate and error.

"The former Sepo counterclaim being viable and the trial court's misapplication of the meaning of this Court's SEPO decision being in error, thus leading to the trial court's order granting the Bank's motion for summary judgment relative to the Sepos' claim against the Bank, this special action relief is granted. The order granting the Bank's motion for summary judgment in relation to the Sepo claim is set aside."

It will be noted that in our memorandum decision we stated that the opinion did not preclude the trial court from "entertaining * * * an appropriate motion for summary judgment."

Almost immediately following our memorandum decision the Sepos moved to amend their counterclaim to recover damages for the December 1972 sale of the property, an item earlier set forth in their answers to the Bank's interrogatories. The Bank, without further discovery, again moved for summary judgment. Without expressly ruling on the Sepo motion to amend, the trial court again granted summary judgment as to the Sepo counterclaim, it being recited in our memorandum decision that the trial court had theretofore dismissed the Bank's complaint on the Sepo note and mortgage on the Bank's motion.

Promptly the Sepos filed the current special action, the hearing thereon having been delayed due to conflicts in the calendar of the Bank's attorney. They have also filed a notice of appeal.

## THE REMEDY

In both special actions the Bank urges that the proper remedy is by appeal and not by special action. We did not expressly rule on this contention in our memoran-

dum decision nor did the Bank seek to have the Supreme Court rule thereon.

Prior to the adoption of the Rules of Procedure for Special Actions, volume 17A of the Arizona Revised Statutes, effective on and after 1 January 1970 and before the appellate courts of this State became more liberal in granting extraordinary writ relief, the Arizona Supreme Court in *Harbel Oil Company v. Superior Court,* 86 Ariz. 303, 345 P.2d 427 (1959), entertained two extraordinary writs to test whether the trial judge, after a reversal, was proceeding contrary to the Supreme Court's opinion and mandate.

In *Tovrea v. Superior Court,* 101 Ariz. 295, 419 P.2d 79 (1966), the Supreme Court, citing Art. VI, Sec. 5[4] of the Arizona Constitution (inadvertently cited as Art. 6, Sec. 4) held that that subsection granted the right to review by mandamus whether the trial court, after an opinion and mandate, was violating the directives of the Supreme Court. This constitutional authority reads as follows:

"§ 5.   Supreme court; jurisdiction; writs, rules; habeas corpus

"Section 5.   The Supreme Court shall have:

*     *     *     *     *     *

"4. Power to issue injunctions and writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

Substantially similar authority is granted to the Court of Appeals as follows:

"§ 12–120.21.   Jurisdiction and venue

"A.   The court of appeals shall have:'

*     *     *     *     *     *

"3. Jurisdiction to issue injunctions, writs of mandamus, review, prohibition, certiorari and other writs necessary and proper to the complete exercise of its appellate jurisdiction."

The case of *Demand v. Gordon,* 106 Ariz. 475, 478 P.2d 99 (1970), is of interest in that after a Court of Appeals opinion

and mandate, special action relief was sought against the trial judge. In an order, the Court of Appeals held that the special action was premature. In an opinion combining a petition to review the Court of Appeals' order and a new and independent Supreme Court special action on the same subject matter, the Supreme Court granted special action relief.

■■■■   We hold that the remedy of special action can be utilized after an appellate decision becomes final to test whether the trial court is acting contrary to the directives of the appellate court.

## LAW OF THE CASE

■■■   The Bank successfully urged upon the trial court that the breach of the condition precedent vitiated all relationships between the Sepos and the Bank and deprived them of their claim of relief. We held in our opinion, as quoted above from 21 Ariz.App. at 610, 522 P.2d 562, that such was not the law in this case. We believe we are right. In *Standard Accident Insurance Company v. Allen,* 38 Ariz. 173, 298 P. 406 (1931), our Supreme Court stated:

"[r]ight or wrong, the mandate of this court was the measure of power in the trial court. This seems to be the universal rule." 38 Ariz. at 177, 298 P. at 407.

In *Temp-Rite Engineering Company v. Chesin Construction Company,* 3 Ariz.App. 229, 413 P.2d 288 (1966), the court stated:

"The appellant has also relied upon the doctrine that an appellate decision, right or wrong, is controlling in subsequent litigation. With this law, we agree. * * * The question of whether or not the plaintiff had conformed to the contract in question and, if not, why not, was not before our Supreme Court in the previous appeal. We believe the following to be a proper statement of the law:

'In the absence of a mandate or opinion to the contrary, the fact that the matter has been on appeal does not pre-

vent an enlargement or restriction of the issues after the case has been remanded for a new trial.'

"*Harbel Oil Company v. Steele*, 1 Ariz. App. 315, 317, 402 P.2d 436, 438 (1965)." 3 Ariz.App. at 231, 413 P.2d at 290.

There have been no new facts presented to the trial court and there has been no new law presented to the trial court which justify the summary judgment denying the Sepos at least some relief on their counterclaim. We decline to rule on each and every phase thereof.

### RELIEF BASED ON THE SALE OF THE PROPERTY BY THE BANK

■ Having determined that the trial court failed to comply with the law set forth in our prior opinion and our prior memorandum decision in this matter and that it necessarily follows that special action relief is appropriate, we deem it proper to comment on the consequences of the December 1972 sale of the mortgaged land by the Bank. This issue was raised by the Sepo answers to the Bank's interrogatories following our opinion and by the Sepo motion to amend following our memorandum decision. At this point it is not controverted that the Sepos spent in excess of $5,500 to secure the release of the lot from the subdivision trust thereby securing sufficient title thereto that the Bank was willing to be the first mortgagee for a construction loan in excess of $19,000. Thereafter the Bank, by summary judgment, foreclosed the loan and in time sold the property to third parties thereby divesting the Sepos of their equity in the property.

The foreclosure judgment was vacated by our opinion and later the Bank dismissed the foreclosure action.

We adopt the following statement found in 5 Am.Jur.2d, Appeal and Error, § 955, p. 382:

"All proceedings had under the judgment are, as between immediate parties at least, ipso facto void and of no effect upon the vacating of a judgment by an appellate court."

Cited as authority is the case of *Ure v. Ure*, 223 Ill. 454, 79 N.E. 153 (1906). *Ure* is cited and quoted with approval in *Markel v. Transamerica Title Insurance Company*, 103 Ariz. 353, 442 P.2d 97 (1968). *Markel* states that:

"The general rule is that a reversal of a judgment restores the parties to the same position as if the action had never been tried." 103 Ariz. at 362, 442 P.2d at 106.

*Markel* points out that this is true though the successful appellant did not file a supersedeas bond in connection with the appeal and that if, pending the appeal, the appellee has divested itself of the property acquired pursuant to the trial court's judgment, later reversed, the successful appellant is entitled to restitution.

The third party purchasers are not parties to this litigation and we are expressly silent as to them.

Special action relief is granted, the Bank's summary judgment against the Sepos is vacated and the trial court should allow the Sepo amendment to their counterclaim.

OGG, P. J., and DONOFRIO, J., concurring.