WALLACE BURKE, Plaintiff-Appellee, *v.* MARILU BURKE, Defendant-Appellant.

Second District    No. 79-652

Opinion filed October 28, 1980.

Rafael A. Del Campo, of Chicago, for appellant.

Roe & Mallon, of Rochelle, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This case is an appeal from the judgment of the trial court in favor of the plaintiff in a suit on a promissory note.

A judgment by confession was entered against defendant on July 12, 1976. The judgment was later vacated, and a trial on the merits was held on October 19, 1979. Defendant argued that her obligation under the note was unenforceable for lack of consideration because she did not receive or benefit from the $25,000 loan. After hearing the testimony of all parties concerned, the trial court entered judgment for plaintiff in the amount of $31,187. This appeal followed.

The defendant and her husband, Michael Burke, were married in September 1971. Shortly after the marriage Michael formed a partnership with his cousin to operate an automobile dealership. In 1973, Michael and the defendant, according to the plaintiff's testimony, decided to buy Michael's cousin out and operate the dealership with Michael as a sole proprietor. The plaintiff, Michael's father, agreed to lend Michael $25,000 for this purpose. The plaintiff prepared a promissory note to be signed by both Michael and his wife, the defendant, as co-makers. According to the testimony of both the plaintiff and Michael, the plaintiff brought the typed note to the home of Michael and Marilu, and they both signed it in his presence. While the defendant testified she did not recall signing the note or even having seen it before the suit, she did not deny the signature on it was hers.

Michael Burke testified that the $25,000, representing the proceeds of the note, was used partly to buy out his cousin and partly for other purposes connected with the dealership. The $25,000 was in two cashier's checks, one for $15,000 and the other for $10,000, and both checks were payable to Michael Burke only. The defendant testified she did not receive any of the proceeds herself and was not even aware that the loan

had been made or the checks received and cashed by Michael. Sometime after the note was executed, the defendant and Michael separated and were separated, although not divorced, at the time of the suit.

Immediately before trial, counsel stipulated to the execution of the note, and both sides agreed that the only issue to be tried was whether there was consideration for the note. As the trial court expressed it, "If the evidence establishes that there was consideration then, of course, the defendant is bound." At the trial, the defendant attempted to show that there was a lack of consideration for the execution of the note on her part, inasmuch as she had never received any part of the proceeds of the note and the checks had been made payable to Michael, her husband, only and had been used by him to buy out his partner and for other purposes in the business, in which the defendant had no interest. The defendant testified that she occasionally helped out in the office but was in no sense a partner in the business. Michael Burke testified that the defendant and he had a conversation about buying his cousin out, previous to the execution of the note, and that the defendant agreed with him that they would borrow the money to do so from Michael's father on a short term basis. The plaintiff testified that the defendant wished to "get him out of there," meaning, he testified, to get Michael's cousin out of the business.

■■ From the testimony it would appear that at least a part of the proceeds of the note were used to buy out Michael's cousin and that the defendant either initiated this idea or at least agreed that the money should be borrowed from the plaintiff for this purpose. Thus, there was evidence that there was consideration passing to the defendant for the execution of the note, inasmuch as it appears to have been the desire of the defendant to buy out Michael's cousin and this was to be accomplished by means of the proceeds of the note in question. It is not, however, necessary for the plaintiff to establish that the maker of the note received the consideration therefor; it is sufficient if the promisee extended the consideration on the strength of the maker's signature, in consideration of the maker's promise to repay, evidenced thereby. See *State Bank v. Sentel* (1973), 10 Ill. App. 3d 86; *In re Estate of Berbecker* (1934), 277 Ill. App. 201; 11 Am. Jur. 2d *Bills and Notes* §216 (1963), which states:

> "Consideration may be given to the promisor or to some other person. It matters not from whom the consideration moves or to whom it goes. If it is bargained for as the exchange for the promise, the promise is not gratuitous."

■■ Under section 3—408 of the Uniform Commercial Code a promissory note is unenforceable unless it is supported by consideration. (Ill. Rev. Stat. 1979, ch. 26, par. 3—408.) Consideration is defined as some

benefit to the promisor or detriment to the promisee (*Stolzenbach v. Pagoria* (1979), 71 Ill. App. 3d 863, 866), and consideration which is sufficient to uphold an ordinary contract is sufficient to validate a promissory note. (Ill. Ann. Stat., ch. 26, par. 3—408, Uniform Commercial Code Comment 3, at 261 (Smith-Hurd 1963); *Hallowell v. Turner* (1972), 94 Idaho 718, 496 P.2d 955.) There is a presumption that a negotiable instrument has been executed for consideration, however, and the burden is on the defendant to show its absence. *First National Bank v. Achilli* (1973), 14 Ill. App. 3d 1; 6.

■■ Defendant contends that her obligation under the note was not supported by consideration because she did not receive or benefit from the $25,000 loan. The factors to be considered in determining whether consideration for a note was received by the maker include (1) who has access to the account in which the proceeds were placed, (2) for what purpose funds were placed in the account, and (3) for whose benefit the funds were ultimately expended. (*Sepo v. First National Bank* (1974), 21 Ariz. App. 606, 522 P.2d 562.) The record in this case shows that the loan was intended to assist Michael with his business and that the checks were issued in Michael's name and deposited in an account over which Michael had exclusive control. Although this evidence supports defendant's position, there is other evidence suggesting that defendant benefited at least indirectly from the expenditure of some of the funds.

The record shows that $15,000 of the borrowed funds were used to buy out Michael's partner in the car dealership but that $10,000 remained in the account to be used for various business related expenses. Defendant testified that Michael contributed to the payment of household expenses and that bills were sometimes paid with checks drawn on the Burke Import account. It is not unreasonable to infer from this testimony that at least a portion of the $10,000 was used for the common benefit of defendant and her husband. Defendant has the burden of proving that her obligation under the note was not supported by consideration, and there is no evidence in this record that the checks drawn on the Burke account for domestic expenses did not deplete to some extent the balance of the $10,000.

This case is distinguishable from *H. Watson Development Co. v. Bank & Trust Co.* (1978), 58 Ill. App. 3d 423, where the wife co-signed the note but was not held liable because the court found that the bank did not in any way rely on her signature in making the loan. In the case before us, the promisee clearly did rely on the signature of the defendant—he insisted on her signature, according to the testimony, and went to the house to have her sign. Neither is this case similar to *Schmidt v. Schmidt* (1929), 253 Ill. App. 514. In that case the note was given two years after

the money was loaned, and the note was represented to the defendant as being an advance on the plaintiff's son's inheritance, which became nonexistent by his death before that of his mother, the promisee.

There is another reason why the judgment in this case should be affirmed. It appears from all the facts that defendant is really an accommodation party within the meaning of section 3—415 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—415) and that separate consideration is therefore not required to establish her liability as a co-maker.

Under section 3—415 of the Uniform Commercial Code, an accommodation party is one who signs an instrument in any capacity for the purpose of lending his name to it. (Ill. Rev. Stat. 1979, ch. 26, par. 3—415(1); *Marcus v. Wilson* (1973), 16 Ill. App. 3d 724.) As is true with suretyship in general, the accommodating party is bound by the consideration moving to the primary obligator, and the obligation of the accommodation maker need not be supported by separate or additional consideration. (Ill. Ann. Stat., ch. 26, par. 3—415, Illinois Code Comment subsection (1), at 298-99 (Smith-Hurd 1963); *St. Charles National Bank v. Ford* (1976), 39 Ill. App. 3d 291, 294; *Warren v. Washington Trust Bank* (1978), 19 Wash. App. 348, 575 P.2d 1077, 1086; *Stockwell v. Bloomfield State Bank* (Ind. App. 1977), 367 N.E.2d 42.) The fact that a co-maker receives no direct benefit from the execution of a promissory note has been held sufficient to justify an inference that he signed only as an accommodation party. *Kerney v. Kerney* (R.I. 1978), 386 A.2d 1100, 1102 (husband found to be only accommodation maker on note with wife); *Lasky v. Berger* (Colo. App. 1975), 536 P.2d 1157.

■■ If the defendant in the present case did not stand to benefit from signing the promissory note, and in fact did not benefit, it is logical to conclude that the only reason she signed was to provide additional security for the loan. It is our opinion that defendant signed the note as an accommodation maker rather than as a co-maker and that the defense of lack of consideration is therefore unavailable.

The judgment of a lower court will be affirmed if it is justified in the law for any reason or ground appearing in the record regardless of whether the particular reasons given by the trial judge or his specific findings are correct or sound. *Continental Grain Co. v. FMC Corp.* (1975), 27 Ill. App. 3d 819, 823.

The judgment of the circuit court of Ogle County is affirmed.

Judgment affirmed.

VAN DEUSEN and WOODWARD, JJ., concur.