706 P.2d 745

The CIVIL RIGHTS DIVISION OF the ARIZONA DEPARTMENT OF LAW, and Jillyn B. Smith, a married woman in her sole and separate right, Petitioners,

v.

The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and the Honorable Jack T. Arnold, a Judge thereof, Respondents,

and

AMPHITHEATER UNIFIED SCHOOL DISTRICT, NO. 10, a body politic, Real Party in Interest.

No. 2CA–SA0224.

Court of Appeals of Arizona, Division 2, Department A.

June 5, 1985.

Review Denied Sept. 10, 1985.

Robert K. Corbin, Atty. Gen. by Phillip A. Austin and Judy Drickey-Prohow, Tucson, for petitioner Civil Rights Div.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Sarah R. Simmons, Tucson, for petitioner Smith.

Clinton L. Liechty, Tucson, for real party in interest.

BIRDSALL, Presiding Judge.

In May 1979, the Civil Rights Division of the Arizona Department of Law (Division) filed a complaint in superior court pursuant to A.R.S. § 41–1481(D) (Supp.Pamph.1984), the Arizona Civil Rights Act, seeking to enjoin the Amphitheater Unified School District No. 10 (District) from engaging in the practice of combining academic teaching and football coaching addendum contracts for initial hiring purposes. The Division alleged that the practice resulted in unlawful sex discrimination in violation of the act, and also sought affirmative relief on behalf of Jillyn B. Smith, whose application for an available academic position had not been considered by the District as a result of its hiring practice and whose complaint before the Division had formed the basis for the action in superior court.

Following the District's attempt to dismiss on the ground of an alleged conflict of interest, Smith obtained private counsel and successfully moved to intervene in the action to protect her claim in the event of an adverse decision on the District's motion. The propriety of the Division's prosecution of the lawsuit was upheld by the supreme court in *Amphitheater Unified School District #10 v. Harte*, 128 Ariz. 233, 624 P.2d 1281 (1981). Smith nonetheless continued in the action as an intervenor, and was represented by counsel at the trial on the merits to the court, which held that a prima facie case of discrimination had not been established, but that in any event, the District had established the defense of business necessity.

The Division appealed from the judgment of the superior court, an appeal which Smith did not join. Finding that the trial court had erred in construing the evidence and applying the law, we reversed its judgment, ordered that judgment be entered in favor of the appellant and that the trial court "make a determination of damages and other appropriate relief in accordance with this opinion." Civil Rights Division of *Arizona Department of Law v. Amphitheater Unified School District No. 10*, 140 Ariz. 83, 88, 680 P.2d 517, 522 (App. 1983).

On remand, Smith's deposition was taken concerning mitigation of damages, and the parties agreed that the matter would be submitted to the court for its determination without a hearing, on the basis of the deposition and the various memoranda filed by the parties. The trial court initially responded with a minute entry order on October 16, 1984, denying any recovery of damages because 1) Smith had not appealed from the first judgment, 2) neither Smith nor the Division had established that she would have been hired absent discrimination, and 3) Smith had failed to mitigate her damages. The trial court further refused to grant the Division's request that the District's hiring practices be monitored, concluding that such relief was not required by this court's mandate. The trial court subsequently granted the Division's request for findings of fact and conclusions of law, and ordered both sides to submit proposed findings and conclusions, which was done. By minute entry dated December 4, 1984, however, the trial court apparently withdrew its October 16 minute entry and directed the Division to move this court for a clarification of its prior mandate "indicating the exact person that they want judgment entered for in regard to the damages." In response to the Division's motion, we entered an order January 25, 1985, directing the trial court "to award damages to Jillyn B. Smith in accordance with the provision of A.R.S. § 41–1481(G)." A.R.S. § 41–1481(G) (Supp.Pamph.1984) provides:

"If the court finds that the defendant has intentionally engaged in or is intentionally engaging in an unlawful employment practice alleged in the complaint,

the court may enjoin the defendant from engaging in such unlawful employment practice and order such affirmative action as may be appropriate. Affirmative action may include, but is not limited to, reinstatement or hiring of employees with or without back pay payable by the employer, employment agency or labor organization responsible for the unlawful employment practice or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of the charge with the division. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union or the hiring, reinstatement or promotion of an individual as an employee or the payment to him of any back pay if such individual was refused admission, suspended or expelled or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, age or national origin or violation of § 41–1464."

This statute is virtually identical to its federal counterpart in Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 2000e–5(g) (1981).

The trial court thereupon entered its order, reiterating its prior finding that no intentional act of discrimination had occurred as well as its disagreement with the conclusions reached by this court. The court further concluded that Smith had failed to prove by a preponderance of the evidence that she was entitled to damages, inasmuch as her odds of being hired absent discrimination were only 85 to one, and the person in fact hired was more qualified than she. The court nevertheless felt bound by this court's clarified mandate to award damages, and therefore adopted certain of the Division's proposed findings of fact pertaining to back pay and awarded Smith the sum of $90,229.22 on the basis of those findings. Pursuant to the trial court's order, the Division submitted a form of judgment which included not only the back pay award, but also a specific finding that the District had engaged in an unlawful employment practice, injunctive relief, a hiring order, as well as an award of prejudgment interest, continuing back pay until hired ("front pay"), and attorney fees.

At the hearing on the proposed judgment, the trial court took issue with the Division's inclusion of the various forms of relief included in the Division's proposed judgment and refused to order any relief other than the back pay award. The trial court construed our opinion as finding the District's practice to be "innocuous" and not authorizing nor requiring any relief other than the back pay award. The Division was again ordered to prepare a judgment for the court's signature. This time, the Division's proposed judgment merely set forth that the District had engaged in an unlawful employment practice and that the plaintiff-intervenor was awarded $90,-229.22 in back pay. By minute entry order, the trial court declined to sign this judgment and instead prepared its own form of judgment which omitted any finding that the District had engaged in an unlawful employment practice and merely awarded back pay in accordance with the Division's proposed findings of fact. This special action followed.

Special action may be utilized as a remedy after an appellate decision has become final to test whether the trial court is acting contrary to the directives of the appellate court. Scates v. Arizona Corporation Commission, 124 Ariz. 73, 601 P.2d 1357 (App.1979); Sepo v. Case, 25 Ariz. App. 176, 541 P.2d 1160 (1975). Although our mandate in this case was not as specific as that in Scates, supra, and this trial court was required to perform more than a merely ministerial act, we nevertheless believe that the circumstances of this case render special action relief appropriate in light of the fact that the District is present-

ly in the process of hiring teachers for the coming school year and that this litigation, which has lasted some six years, should be concluded. The substance of the Division's petition is that the trial court acted without and in excess of its jurisdiction in failing to comply with this court's mandate that it enter judgment in favor of the Division and make a determination of damages and other appropriate relief. Specifically, the Division contends that the trial court erred in awarding monetary damages while refusing to find that the District had intentionally engaged in unlawful employment practice and in refusing to award any other relief. We agree.

■ In our opinion on the appeal in this case, we noted the absence of Arizona precedent construing A.R.S. § 41–1481 and the appropriateness of examining federal cases construing Title VII of the Civil Rights Acts of 1964, the statute from which § 41–1481 was taken. The same is true not only in the context of determining violations, but also in considering the relief to be awarded upon a finding that the defendant has engaged in an unlawful employment practice in violation of the statute. Even in the absence of any case law, however, it is self-evident that an award of damages in any form can only be predicated upon a finding that the statute has been violated. Moreover, that determination had already been made by this court on appeal and was the law of the case. The trial court thus acted without and in excess of its jurisdiction in failing to enter a judgment that the District had engaged in an unlawful employment practice in accordance with our mandate.

■ With regard to the nature of the relief accorded, the question is more accurately one of whether the trial court abused its discretion in denying any relief other than the back pay award, inasmuch as the statute clearly confers broad discretion on the trial court in determining the appropriate relief. In reviewing the exercise of that discretion, we find federal precedent under Title VII to be instructive and apposite.

"The broad scope of relief which the courts may award under Title VII is intended to accomplish an express Congressional purpose: 'to make the victims of unlawful discrimination whole, ... and the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.'" A. Larson and L. Larson, 2 Employment Discrimination, Procedures and Remedies § 55.32 at 11–50 (1984), quoting H.R. 1746, Section by Section Analysis, 117 Cong.Rec. 3462 (1972).

See also *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). We have no hesitation in concluding that, in enacting civil rights legislation which is substantially identical to the federal act, the Arizona legislature intended to accomplish the same objectives on the state level.

■ With regard to the first objective of the statute, that is, the elimination of the unlawful employment practice, injunctive relief is not only appropriate but necessary. Such relief is inappropriate only where elimination of the practice has been affirmatively demonstrated through an affirmative action program or otherwise. *Manning v. International Union*, 466 F.2d 812 (6th Cir.1972), cert. denied, 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 sub nom. *Manning v. General Motors Corp.* (1973). Indeed, absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law, a grant of injunctive relief is mandatory. *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310 (5th Cir.1977), cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). In the present case, there was no evidence before the trial court which affirmatively demonstrated that the District had ceased its unlawful coupling of academic and coaching contracts for hiring

purposes. Absent such evidence, the trial court clearly abused its discretion in failing to grant appropriate injunctive relief.

■ The second objective of the statute is to make the victims of discrimination whole and to restore them to a position where they would have been but for the discrimination. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Albemarle,* supra. Our statute, like the federal statute, expressly authorizes the court to order "such affirmative action as may be appropriate," including without limitation a hiring order and an award of back pay. A.R.S. § 41-1481(G) (Supp.Pamph.1984). In the present case, the Division prayed for relief not only in the form of a hiring order and an award of back pay, but also sought continuing pay ("front pay") until such time as Smith was hired, prejudgment interest, and attorney fees. While it is true that the statute confers broad discretion upon the trial court to fashion relief appropriate to the circumstances of each case, that discretion is not unlimited. We find the Supreme Court's analysis of the trial court's role under Title VII in the context of a request for back pay to be instructive here in construing our own statute:

"The petitioners contend that the statutory scheme provides no guidance, beyond indicating that backpay awards are within the district court's discretion. We disagree. It is true that backpay is not an automatic or mandatory remedy; like all other remedies under the Act, it is one which the courts 'may' invoke. The scheme implicitly recognizes that there may be cases calling for one remedy but not another, and—owing to the structure of the federal judiciary—these choices are, of course, left in the first instance to the district courts. However, such discretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' ... The power to

award backpay was bestowed by Congress, as part of a complex legislative design directed at a historic evil of national proportions. A court must exercise this power 'in light of the large objectives of the Act,'" *Albemarle,* supra, 95 S.Ct. at 2370–71 (citations omitted).

The Court then discussed those objectives, which we have noted above, and concluded:

"As this makes clear, Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the 'fashion[ing] [of] the most complete relief possible.'

It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." 95 S.Ct. at 2373.

■ Although the award of back pay is not in issue here, similar standards have been applied to other forms of relief which are in issue. With regard to hiring orders, the courts have held that a job applicant who proved unlawful discrimination in the employment process is entitled to an order placing the applicant in a comparable position unless the defendant shows by clear and convincing evidence that even in the absence of discrimination the applicant would not have been hired. *Briseno v. Central Technical Community College Area,* 739 F.2d 344 (8th Cir.1984); *Garza v. Brownsville Independent School District,* 700 F.2d 253 (5th Cir.1983); *Nanty v. Barrows Co.,* 660 F.2d 1327 (9th Cir.1981). Where a comparable position is not immediately available, "front pay," constituting the difference between what the applicant would have earned in a comparable position and the amount he earns in mitigation, is appropriately awarded until such time as he "attains an opportunity to move to his 'rightful place'" *James v. Stockham*

*Valves & Fittings Co.,* supra, at 358. See also *Briseno v. Central Technical Community College Area,* supra; *Parker v. Siemens-Allis, Inc.,* 601 F.Supp. 1377 (E.D. Ark.1985).

 An employer may defend against individual claims for affirmative relief by presenting *clear and convincing evidence* that the applicant did not meet the employer's objective, nondiscriminatory requirements for the position, or that there were other, more qualified applicants. See *International Brotherhood of Teamsters,* supra; *Franks v. Bowman Transportation Co.,* supra. In the present case, apparently applying a *"preponderance of the evidence"* standard, the trial court found in its minute entry of February 6, 1985, that "the person hired to fill this position had better qualifications in the view of the trier-of-fact than Jillyn B. Smith." Apart from the fact that the trial court applied the wrong standard of proof, there was absolutely no evidence before it in support of this finding. To the contrary, the only testimony to which we have been directed would indicate that the decision to hire the successful applicant was based on considerations which we have held to be unlawfully discriminatory.

 Moreover, since the District has neither appealed from the judgment awarding back pay nor filed its own special action challenging the propriety of that award on the ground that it had met its burden of proving that Smith would not have been hired,[1] it is precluded from opposing the award of other appropriate affirmative relief on those grounds. See *Garza v. Brownsville Independent School District,* supra. Accordingly, we hold that the trial court abused its discretion in refusing to direct the District to place Jillyn Smith in the first available full-time teaching position for which she is qualified and in refusing to award front pay until such time as she is placed in that position.[2]

 The denial of an award of prejudgment interest was also an abuse of discretion. Our supreme court has clearly stated that prejudgment interest on a liquidated claim is a matter of right. *Fleming v. Pima County,* 141 Ariz. 149, 685 P.2d 1301 (1984). Under Rule 54(d), Rules of Civil Procedure, 16 A.R.S., the Division was entitled to recover prejudgment interest on Smith's behalf even though not specifically requested in its complaint. *Arizona Title Insurance & Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 484 P.2d 639 (1971).

With regard to attorney fees, A.R.S. § 41–1481(J) (Supp.Pamph.1984) authorizes the trial court to make an award to "the prevailing party, other than the division...." The federal courts have held that the purpose of the attorney fee provision is "to make it easier for a plaintiff of limited means to bring a meritorious action." *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980). The Supreme Court in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694 at 698, 54 L.Ed.2d 648 (1978) also held that because of "the intent of Congress to cast a Title II plaintiff in the role of 'a "private attorney general," vindicating a policy that Congress considered of the highest priority,' ... a prevailing plaintiff ... 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" This rule has been ap-

---

1. The District has filed a petition for special action in the supreme court, seeking relief from this court's order clarifying our prior mandate and from the trial court's judgment awarding back pay to Smith. However, the sole ground urged for relief is that Smith's failure to appeal the original judgment in her own right renders that judgment res judicata as to any individual relief.

2. The Division also requested that Smith be granted tenure eligibility calculated as if she had been hired on August 23, 1978. Since such an order would effectively grant her a tenured position, whereas regardless of any discrimination she would initially have been hired on a probationary basis, we believe such relief would exceed the scope of relief intended by the statute. See *Briseno v. Central Technical Community College Area,* supra.

plied as well to intervenors, and even under circumstances where individual relief has been denied. *Equal Employment Opportunity Commission v. Murphy Motor Freight Lines, Inc.,* 488 F.Supp. 381 (D.Minn.1980); see also *Miller v. Staats,* 706 F.2d 336 (D.C.Cir.1983).

Under the circumstances of this case, however, we believe that the trial court was correct in refusing to award attorney fees to Smith. Unlike the provisions of subsection (G) authorizing injunctive and affirmative relief, which we have held may be sought by the Division on behalf of Smith, the provision for attorney fees is set forth in a separate subsection. In our view, this reflects the intent of the legislature that attorney fees constitute a form of relief which may be sought only by individual plaintiffs and/or intervenors. Viewed in this light, the Division is precluded from seeking an award on Smith's behalf, and since Smith did not appeal from the trial court's original judgment against her, the trial court properly refused to award her attorney fees.

The judgment awarding $90,229.22 in back pay to Smith is affirmed. The remainder of the judgment is vacated, the matter is remanded to the trial court, and the trial court is directed to enter judgment:

1) that the District has intentionally engaged in an unlawful employment practice in violation of A.R.S. § 41–1463;

2) permanently enjoining the District from combining, for initial hiring purposes, vacant classroom teaching positions with contemporaneously vacant football coaching positions, unless and until the District can demonstrate, at an adversary hearing prior to such positions being advertised or administered, that the practice is necessary to the safe and efficient operation of the school district;

3) directing the District to place Jillyn B. Smith in the first available full-time teaching position for which she is qualified;

4) awarding to Jillyn B. Smith continuing back pay ("front pay") until such time as she is placed in a full-time teaching position, in the amount of $24,948.00 for the 1984–1985 academic year, and in such continuing amounts as she would have received had she been hired initially in August 1978;

5) awarding to Jillyn B. Smith prejudgment interest at the statutory rate from August 23, 1978, to date of judgment.

HOWARD and FERNANDEZ, JJ., concur.