553 P.2d 1242

Roland R. DESRUISSEAU and Vera Desruisseau, his wife, and Pauline Lester, a single woman, Appellants and Cross-Appellees,

v.

Guy ISLEY and Mary Ann Isley, his wife, and Isley's Refrigeration, Inc., an Arizona Corporation, Appellees and Cross-Appellants.

No. 1 CA-CIV 2865.

Court of Appeals of Arizona, Division 1, Department A.

July 1, 1976.

Rehearing Denied July 26, 1976.

Review Denied Sept. 9, 1976.

L. Dennis Marlowe, Tempe, for appellants and cross-appellees.

Daughton, Feinstein & Wilson by Donald Daughton and Allen L. Feinstein, Phoenix, for appellees and cross-appellants.

## OPINION

FROEB, Judge.

This dispute between two adjoining property owners brought forth a lawsuit for an injunction on the basis that conduct by one owner was an actionable nuisance. This, in turn, produced a counterclaim to quiet title to a nine-foot tract of land in the middle of the two properties. From judgments denying the injunction and quieting title, both parties appeal.

Roland and Vera Desruisseau, appellants and plaintiffs in the trial court, own a five-acre tract of land with frontage of approximately 165 feet on the south side of West Main Street in Mesa, Arizona. Pauline Lester, also an appellant and plaintiff in the trial court, is a mobile home tenant living on the property. For simplicity they are sometimes referred to collectively in our opinion as "Desruisseau." Guy and Mary Ann Isley, appellees and defendants in the trial court, own a tract of land of nearly the same dimensions immediately west of the Desruisseau property which also fronts on West Main Street. They are the owners of Isley's Refrigeration, Inc., an Arizona corporation, also an appellee and defendant in the trial court. In this opinion, we refer to them collectively as "Isley."

The Desruisseau property is primarily used as a mobile home park. The Isley property is used for the repair and installation of various accessories for motor vehicles, as well as for storage of tools and equipment used in the business.

The land involved here is commercial, zoned C–3 under the City of Mesa zoning ordinance.

Desruisseau presented proof at the trial that intense noise came from the Isley business which interfered with the peace and enjoyment of Desruisseau and the residents living in the mobile home park. The noise resulted from loud speakers, hammering and pounding of metal, sawing, drilling with electric tools and voices "practically every day and sometimes on Sunday." There was evidence that residents on the Desruisseau property found the noise "unbearable" and "beyond compare," penetrating their homes even when all windows and doors were closed. Pauline Lester testified that she lost sleep and wages because of the noise and would move if it continued. Desruisseau said he had trouble renting the

mobile homes because of the noise. There was also evidence that Isley stored scrap metal, old fuel tanks, secondhand refrigeration units, junk and concrete blocks on the property. In addition to the noise and unsightliness, Desruisseau complained of odors, dog waste, dust, blowing trash and trespassing waters.

Based on this and other evidence, Desruisseau sought a court decree enjoining Isley from further operation of the business on the property unless the noisome conditions were abated. Pauline Lester sought compensatory and punitive damages for the consequences to her from the conduct against which Desruisseau sought an injunction.

Isley, on the other hand, presented evidence generally to the effect that the noise and activity emanating from his property were necessary to the business of repairing and installing accessories on motor vehicles; that his business was, in the scope of its operation, similar to other like businesses with respect to its hours of operation, tools used and noise produced. In addition, there was evidence, which we may take as conclusive, that the operation of the business was in complete conformity with C–3 zoning in the City of Mesa.

There was, of course, considerable evidence presented to the court, beyond what we have described, relating to various aspects of the claims, some peripheral to the ultimate issues involved. Although it would serve little purpose to detail all the evidence here, one subject of exploration was the history of ownership and development of the two properties. Isley had originally operated a business of a similar nature at a different location in Mesa from 1957 to 1968. He then entered into a lease of the property involved here and conducted the business at this location, expanding it over the years. On April 1, 1973, Isley entered into an agreement to buy the property, at which time the Isley business was expanded further. George W. Cameron, Desruisseau's predecessor in interest, had acquired the adjacent property in 1949. At that

time the only business on the tract, later acquired by Isley, was a gas station, the property being otherwise used for farming. By 1959, Cameron had developed a mobile home park with 24 units. He was one of the persons signing the petition seeking to have the property rezoned C–3 in 1966, following annexation by the City of Mesa. Desruisseau acquired the Cameron property in May, 1971, and expanded the number of spaces for mobile homes from 24 to 46. He knew that the Isley property, as well as his own, was zoned C–3, and was aware of the nature of the Isley business. The mobile home park has no recreational facilities and all tenants are on a month-to-month tenancy. Desruisseau lives on the property in a residence which has been there since 1950.

The area near to both the Isley and Desruisseau properties is basically commercial in nature, with West Main Street constituting the main artery between the cities of Mesa and Tempe. The street is also designated as State Highway 60–70. To the south is the Southern Pacific Railroad track. In the general area are motorcycle shops, an outdoor theater, a dairy, a manufacturing plant belonging to Motorola, a U-Haul trailer storage lot, a boat sales lot, two bars and an automobile repair shop. There is evidence that at the time rezoning was sought in 1966, the Mesa Planning and Zoning Board concluded that the entire area then being rezoned, including both properties involved here, would ultimately develop as commercial property and that residential uses should be discouraged.

After a lengthy trial the court ruled in favor of Isley and denied the injunction. If the only question on appeal was whether there was sufficient evidence to support the judgment of the trial court, we would affirm without further discussion. It is quite apparent that there was conflicting evidence as to whether the Isley business constituted a nuisance, either public or private. It was the function of the trial court to evaluate the evidence in making this determination. Where there is rea-

sonable evidence to support its conclusion, we will not disturb it on appeal. *Aetna Loan Co. v. Apache Trailer Sales*, 1 Ariz. App. 322, 402 P.2d 580 (1965). We have said, in such situations, that we will take the evidence in the strongest light in favor of the trial court's decision. *Linsenmeyer v. Flood,* 1 Ariz.App. 502, 405 P.2d 293 (1965). It follows, of course, that we will not substitute our judgment for that of the trial court. *Bud Antle, Inc. v. Gregory,* 7 Ariz.App. 291, 438 P.2d 438 (1968).

Desruisseau contends, however, that the determination by the trial court that the Isley business was not a nuisance was based upon erroneous conclusions of law. His argument is that (1) the court believed that mere compliance with C–3 zoning was by itself a sufficient defense against a claim of nuisance, and (2) the court incorrectly interpreted the zoning ordinance.

■ We do not find that these contentions are borne out by the court's findings of fact and conclusions of law.[1] On the first issue, the court found that the noise emanating from the Isley property was reasonably related to the business under the circumstances and did not constitute either a public or private nuisance (Finding No. 5). Such a finding and indeed the lengthy trial would have been unnecessary if the court had believed that C–3 zoning was a complete defense. Likewise, the court concluded that Desruisseau failed to carry the burden of proving the allegations of the complaint (Conclusion No. 4) which also negates belief by the court that C–3 zoning was a complete defense. The

I. FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' COMPLAINT

Pursuant to Arizona Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law on plaintiffs' complaint in this cause:

FINDINGS OF FACT

1. The plaintiffs Roland R. Desruisseau and Vera Desruisseau, his wife, are operating businesses on the following described real property located in Maricopa County, Arizona:

The East 165 feet of the East half of the Northwest quarter of the Southeast quarter of Section 19, Township 1 North, Range 5 East of the Gila and Salt River Base and Meridian, except the North 50 feet.

Said property has been zoned C–3 by the City of Mesa, Arizona, since March, 1966.

2. The defendant, Isley's Refrigeration, Inc., an Arizona corporation, is operating a business on the following described real property located in the City of Mesa, Maricopa County, Arizona:

The East half of the Northwest quarter of the Southeast quarter, Section 19, Township 1 North, Range 5 East, Gila and Salt River Base and Meridian, except for the East 165 feet, and except for the West 330 feet thereof.

Said property has been zoned C–3 by the City of Mesa, Arizona, since March, 1966.

3. All aspects of both businesses are operated in compliance with the existing zoning regulations of the City of Mesa, Maricopa County, Arizona.

4. All aspects of both businesses are operated in compliance with all applicable city and state laws respecting public health.

5. Various noises emanate from the premises of the defendants which noises are associated with the business endeavors carried on upon those premises, although such noises from time to time may be heard upon the adjoining premises, and might interfere with attempts to sleep during the daytime. Such noises are reasonably necessary to the performance of the lawful business carried on upon the premises and under the circumstances of this case including the particular locality and zoning constitute neither a nuisance, public or private, nor a violation of the City of Mesa Noise Ordinance.

6. No right to damages has been established by any plaintiff.

CONCLUSIONS OF LAW

1. Land use controls must allow for all reasonable uses of land somewhere within each planning area.

2. A business activity carried on in compliance with existing zoning regulations for the use of land in its particular location will not be enjoined as a nuisance.

3. Residential users of land zoned for business and commercial usage may not, through injunction, require commercial users to conform to residential requirements.

4. Plaintiffs have failed to bear the burden of proof on the allegations in their complaint, and defendants are entitled to judgment against plaintiffs and each of them.

court *did* state, however, that a business activity carried on in compliance with existing zoning regulations will not be enjoined as a nuisance (Conclusion No. 2). We agree that, standing alone, this conclusion is erroneous and thus can be read to support Desruisseau's argument. The conclusion is legally correct as it pertains to a *public* nuisance. *Green v. Castle Concrete Co.*, 181 Colo. 309, 509 P.2d 588 (1973); *Urie v. Franconia Paper Co.*, 107 N.H. 131, 218 A.2d 360 (1966); *Commerce Oil Refining Corp. v. Miner*, 281 F.2d 465 (1st Cir. 1960). It is incorrect as applied to a *private* nuisance.[2] With respect to the latter, compliance with a zoning ordinance is a persuasive factor in determining the reasonableness of the activity, but it is not conclusive. *Dawson v. Laufersweiler*, 241 Iowa 850, 43 N.W.2d 726 (1950); *Weltshe v. Graf*, 82 N.E.2d 795 (Mass.1948). This is based on the principle that a zoning regulation, of itself, involves a determination by a local government as to the reasonableness of land use. *Green v. Castle Concrete Co.*, supra.

Nevertheless, taking into account all of the findings and conclusions made by the court, it is apparent that the court decided the overall question of whether there existed a private nuisance by weighing the facts presented, not by applying an incorrect rule of law. We think Conclusion No. 2 must therefore be interpreted as applying only to the claim of public, as opposed to private, nuisance.

The second contention made by Desruisseau is that the Isley activities violated the zoning ordinance when it is correctly interpreted. His argument here is based on the idea that regulations promulgated by the City of Mesa for other zoning districts should be deemed to apply to the commercial C–3 district in which the Isley property is situate, notwithstanding the fact that there are separate and distinct regulations for the C–3 district. More particularly, he argues that (1) since the commercial C–3 zoning specifically allows commercial C–2 uses, the C–3 uses should be subject to C–2 regulations; and (2) since industrial M–1 and M–2 zoning districts allow heavier (or more severe) uses but regulations for these uses are in certain instances more restrictive than commercial C–3 regulations, the M–1 and M–2 regulations should be deemed to restrict C–3 uses. If the contentions of Desruisseau were correct, it is apparent from the undisputed evidence that the Isley business would be in violation of the zoning ordinance. Nevertheless, the trial court found that the activities did not violate the zoning ordinance and we agree.

While it is true that a C–3 district allows all uses permitted in a C–2 district, it does not follow that the regulations applicable to C–2 must be read into C–3 merely because C–2 uses are permitted. The decision to enact regulations pertaining to each zoning district is a legislative one. It would be a simple matter to include C–2 regulations within the C–3 regulations if that were the desire of the City of Mesa. We must, therefore, assume that the regulations enacted for C–3, and only those regulations, restrict the C–3 uses.

Likewise, we perceive no reason to read the regulations for M–1 and M–2 into the uses permitted in C–3. The mere fact that M–1 and M–2 zoning classifications permit heavier industrial type uses but at the same time regulations thereunder contain greater control over noise, odors and activities than do the C–3 regulations, is again a legislative determination made by the City of

---

2. The Arizona Supreme Court has said:

The difference between a private nuisance and a public nuisance is generally one of degree. A private nuisance is one affecting a single individual or a definite small number of persons in the enjoyment of private rights not common to the public, while a public nuisance is one affecting the rights enjoyed by citizens as a part of the public. To constitute a public nuisance, the nuisance must affect a considerable number of people or an entire community or neighborhood. *Spur Industries, Inc. v. Del E. Webb Development Co.*, 108 Ariz. 178, 183, 494 P.2d 700, 705 (1972).

Mesa. Desruisseau has referred us to no rule which would require the M-1 and M-2 regulations to be read into the C-3 regulations and we know of none.

In summary, while we recognize that the findings and conclusions of the court have shortcomings which could have been cured by amendments urged by Desruisseau following the trial, we nevertheless conclude that the alleged errors are basically technical in nature and are insufficient as a matter of law to defeat the judgment.

## THE ISLEY COUNTERCLAIM TO QUIET TITLE

■ We find error in the judgment of the trial court purporting to quiet title in Desruisseau to a nine-foot strip of land belonging to Isley.

The Isley and Desruisseau properties involved here lie side-by-side. For reasons which do not clearly appear, the fence on the easterly side of the Isley property is not erected on the property line which forms the western boundary of the Desruisseau property. Instead, it is placed nine feet west of the property line. It thus has permitted Desruisseau to enter upon and make improvements to the nine-foot strip as though it were part of the Desruisseau property. There is no dispute as to the correct legal title to either the Isley or Desruisseau property. The records show, without question, that Isley owns legal title to the nine-foot strip.

It is not contended that Desruisseau acquired title to the strip by adverse possession. The ten-year period required by A.R.S. § 12–526 had not run when the complaint was filed.

The claim by Desruisseau of ownership of the nine-foot strip is based upon estoppel. His argument is that he relied on the fence as the boundary and consequently built valuable and permanent improvements on the nine-foot strip. He further argues that Isley stood by watching the improvements being placed on the land and said or did nothing. The trial court agreed and concluded that Isley was estopped to claim ownership. By its judgment it ordered that ownership of the strip be granted to Desruisseau. We hold this was error.

With certain exceptions, such as passage of title by descent and distribution, operation of law, eminent domain and adverse possession, title to real property may be transferred only by an instrument in writing as specified by A.R.S. § 33–401. We hold that estoppel is unavailable as a theory by which Isley can be divested of legal title. To hold otherwise would, among other things, render ineffective A.R.S. § 12–526 pertaining to adverse possession. The Desruisseau claim falls squarely within the statutory definition of adverse possession:

> "Adverse possession" means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another [A.R.S. § 12–521.]

Thus, their possession of the strip could ripen into title by adverse possession only if ten years had elapsed without commencement of an action by Isley. A.R.S. § 12–526.

Desruisseau contends that the true issue was a boundary dispute which was correctly settled by the trial court. We reject this since there was never any question as to where the dividing line was between the two properties. This was at all times reflected by the legal descriptions in the deeds. There was never any contention that a boundary line consistent with the legal description could not be located. The sole issue was the legal effect of possession by one upon the other's property.

For the reasons stated, the judgment in favor of appellees and cross-appellants dismissing the complaint is affirmed. The judgment in favor of appellants and cross-appellees upon the counterclaim to quiet title is reversed.

DONOFRIO, P. J., and OGG, J., concur.