660 P.2d 1228

**Jessie M. CISNEROS, a single woman, Plaintiff/Appellant,**

v.

**SEARS, ROEBUCK & CO., a corporation, Defendant/Appellee.**

**No. 2 CA–CIV 4124.**

Court of Appeals of Arizona, Division 2.

Sept. 28, 1982.

Rehearing Denied Feb. 4, 1983.

Review Denied Mar. 15, 1983.

Michael L. Price and Virginia C. Howard, Tucson, for plaintiff/appellant.

Lohse & Bloom by Clifton E. Bloom, Tucson, for defendant/appellee.

**OPINION**

HOWARD, Chief Judge.

This suit was brought under the Arizona Civil Rights Act, A.R.S. § 41–1461 et seq., with appellant alleging unlawful discrimination on the basis of sex. The trial court awarded judgment for the employer-appellee. The issue on appeal is whether appellant established a prima facie case of discrimination and if so whether employer rebutted such. We affirm.

At the onset we recognize that this court will not substitute its judgment for that of a trial court in determining whether there is sufficient evidence to support the trial court's judgment. *Desruisseau v. Isley,* 27 Ariz.App. 257, 553 P.2d 1242 (1976). In addition, we note that neither appellant nor appellee asked for findings of fact or conclusions of law under Rule 52(a), Arizona Rules of Civil Procedure, 16 A.R.S. The purpose of such findings is to enable appellate courts to examine the basis upon which the trial court relied in reaching its ultimate judgment. *Ellingson v. Fuller,* 20 Ariz.App. 456, 513 P.2d 1339 (1973). When this is not done on appeal it will be presumed that the superior court found every fact necessary to support the judgment and such presumptive findings must be sustained if evidence on any reasonable construction justified them. *Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977).

The facts viewed in the light most favorable to sustaining the judgment are as follows. Appellant was hired by appellee Sears at its Park Mall Tucson store on August 13, 1976, as a full-time maintenance worker on the day shift. The duties of her job were characterized by appellant as "light custodial maintenance" or "domestic cleaning." Appellee described them as "light-duty" maintenance. At the time appellant was hired, there was also a classification of "heavy-duty" maintenance employees who worked night shifts and operated scrubbing, waxing, buffing and shampooing machines, emptied and bailed trash, vacuumed ceiling vents, and did other general cleaning tasks. She did not have expe-

rience with, and was not hired to run machines, although the "heavy-duty" classification was open to anyone who was qualified for it regardless of gender. It was important, however, that the person hired for the heavy-duty classification have experience with the machines in order not to damage the floors.

During appellant's employment, there were four to five full-time employees in the maintenance department, three of whom had supervisory positions and were considered "heavy-duty" maintenance workers. The majority of workers in the store and in the department were part-time employees.

After appellant was hired, appellee hired an additional full-time maintenance employee who remained employed after appellant was laid-off. However, this individual was considered a part-time supervisor, had a security clearance and did "heavy-duty" maintenance work. Appellant was the only "light-duty" full-time maintenance worker employed by appellee and she had no supervisory duties.

On December 28, 1977, appellant was laid-off because of economic reasons within the store and to maximize efficiency in the maintenance department as there was an overlap of people on the same shift doing the same tasks. Aptitude, ability, job duties and length of service were all factors considered by the store in the lay-off situation. It was also the store's policy to prohibit full-time employees from being placed on part-time status, even if they were laid-off in a reduction of force move. After appellant was laid-off, appellee hired a part-time person to replace her. Appellant contends that she was in fact terminated because of her sex without any non-discriminatory justification for the action.

The Arizona Civil Rights Act, A.R.S. § 41–1461 et seq., contains the principal anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., all of which pertain to the hiring, discharge, segregation, or classification of employees based upon an individual's race, color, religion, sex or national origin. Since the Arizona statute annotations refer to federal precedent and because Arizona is lacking in case precedent, an examination of federal cases is necessary.

Under current law surrounding Title VII and therefore by inference A.R.S. § 41–1461 et seq., two separate but related theories are available to prove a prima facie case of employment discrimination: disparate (discriminatory) impact and disparate treatment. "Disparate treatment ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the basic allocation of burdens and order or presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination ie., that she applied for an available position, for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. See *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Second, if the plaintiff succeeds in this proof, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* supra, 411 U.S. at 802, 101 S.Ct. at 1824. Third, if the defendant carries this burden, the plaintiff then has an opportunity to prove by a preponderance of evidence that the reasons given were not true but were merely a pretext. *McDonnell Douglas Corp. v. Green,* supra, 411 U.S. at 804, 101 S.Ct. at 1825. It must be emphasized that the ultimate burden of persuading the trier of fact that the defendant intentionally dis-

criminated against the plaintiff remains at all times with the plaintiff. *Texas Department of Community Affairs v. Burdine,* supra.

Disparate impact cases, on the other hand, involve employment practices which are facially neutral in their treatment of different groups but that in fact fall more harshly on one group. *Griggs v. Duke Power Company,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In this instance, the prima facie case is only that the practice operates to exclude a group and proof of a discriminatory motive is not required. *Griggs v. Duke Power Company,* supra. The employer then must demonstrate that the practice is a business necessity justified as necessary for safe and efficient job performance. *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). If it is determined by the trier that there was not a business necessity, then each person in the class must prove that they applied and were qualified for the job and were rejected. *International Brotherhood of Teamsters v. United States,* supra.

Appellant does not clearly distinguish which theory of discrimination she wishes applied to the facts of this case, but under either we think that she did not establish a primacase. "Central to both theories of liability where sex discrimination is alleged is the existence of an identifiable employment practice or policy that demonstrably affects all members of a class in a substantially similar, if not an identical manner." *Chrisner v. Complete Auto Transit, Inc.,* 645 F.2d 1251, 1257 (6th Cir.1981). In simplified terms, it is a question of whether a member of the opposite sex would have been discharged in the same circumstances. Larson, Employment Discrimination, Vol. 1, § 25.30 (1982).

We find no evidence of an employment practice by Sears which justifies a rebuttable presumption that there was an intention to treat either appellant individually or women as a group differently because of sex. Nor do we see a practice or policy which adversely impacts on females. While it is true that appellant was the only woman on a full-time maintenance staff of four to five people and the only person to have a light-duty maintenance position, we do not find that fact in itself to show discriminatory animus. We see no indication that under similar circumstances, if appellant had been male, she would not have been discharged.

There is nothing in the Arizona Civil Rights Act which "shall be interpreted to require that the less qualified be preferred over the better qualified simply because of race, color, religion, sex, or national origin." A.R.S. § 41–1463(A). Sears is not required to remove a maintenance worker who has been using certain specialized equipment for a long period of time in order to keep a female employee who must be trained to use that equipment. See *Nellis v. Sunshine Dairy,* U.S.Dist. Court, Dist. of Oregon, 21 FEP Cases 327 (1979).

Citing federal regulations, however, appellant claims that any light-duty/heavy-duty classification is discriminatory per se. The specific regulation states:

"(b) A seniority system or line of progression which distinguishes between 'light' and 'heavy' jobs constitutes an unlawful employment practice if it operates as a disguised form of classification by sex, or creates unreasonable obstacles to the advancement by members of either sex into jobs which members of that sex would reasonably be expected to perform." 29 C.F.R. § 1604.3(b).

Again, appellant had the burden of proving that "light-duty" operated as a disguised form of classification by sex, and this she failed to do. In our opinion, this classification system was based upon the type of work performed, not the sex of the person doing the work. There is no evidence that only women were systematically hired for light-duty maintenance or systematically excluded from heavy-duty maintenance. See *Nellis v. Sunshine Dairy,* supra.

For the above reasons we find that Sears had nondiscriminatory reasons for discharging appellant and affirm.

HATHAWAY and BIRDSALL, JJ., concur.