680 P.2d 517

The CIVIL RIGHTS DIVISION OF the
ARIZONA DEPARTMENT OF LAW,
Plaintiff/Appellant,

v.

AMPHITHEATER UNIFIED SCHOOL
DISTRICT NO. 10,
Defendant/Appellee.

No. 2 CA–CIV 4720.

Court of Appeals of Arizona,
Division 2.

Dec. 9, 1983.

See also, 128 Ariz. 233, 624 P.2d 1281.

Robert K. Corbin, Atty. Gen. by Phillip A. Austin and Philip G. Urry, Phoenix, and Judy Drickey-Prohow, Tucson, for plaintiff/appellant.

Clinton L. Liechty, Tucson, for defendant/appellee.

## OPINION

HOWARD, Chief Judge.

This is a civil rights action brought pursuant to A.R.S. § 41–1481(D). The main question raised here is whether the school district engaged in unlawful sex discrimination when it required applicants for a high school biology teaching position to also be able to coach varsity football. The trial court held that plaintiff had not established a prima facie case of sex discrimination but that if plaintiff had, defendant school district had effectively established the defense of business necessity. We hold that the trial court erred in its determination and we reverse.

There are two primary theories of liability in the area of employment discrimination. They are disparate treatment and disparate impact. The two are conceptually distinct. Because the trial court's findings of fact and conclusions of law indicate some confusion between the two areas we will begin with a discussion of these two theories. The Arizona Civil Rights Act contains the principal anti-discrimination provisions of Title VII of the Civil Rights

Act of 1964. 42 U.S.C. §§ 2000e et seq. Since the Arizona Revised Statutes Annotated refer to federal precedents, and because Arizona is lacking in case precedent, it is appropriate to examine federal cases interpreting the Federal Civil Rights Act. *Cisneros v. Sears Roebuck & Company*, 135 Ariz. 301, 660 P.2d 1228 (App.1982).

## DISPARATE TREATMENT

■ Disparate treatment is that theory which most people think of in terms of a discrimination case. Simply, it requires that an employer treat certain people less favorably because of their race, color, religion, sex or national origin. The plaintiff is required to prove discriminatory intent although it can in some situations be inferred from the fact of the differences in treatment. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The burden of proof in a disparate treatment case is always on the plaintiff. Once a plaintiff has shown that she applied for a position, was qualified, was rejected and the position remained open, defendants need merely articulate a legitimate non-discriminatory reason for their decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). After the employer has articulated this reason, the burden is then upon the plaintiff to show that the reason was a mere pretext for discrimination. The burden remains at all times on the plaintiff. *McDonnell Douglas Corp. v. Green*, supra; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

## DISPARATE IMPACT

■ Disparate impact cases, on the other hand, involve employment practices which are facially neutral in their treatment of different groups. Plaintiff need not show any intentional discrimination but must show merely the fact that the employment practice itself has the effect of excluding a group protected by the Civil Rights Act. *Griggs v. Duke Power Com-*

*pany*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). To establish a prima facie case plaintiff must show only that a business practice exists and that it has the effect of discriminating against a protected group. *Griggs v. Duke Power Company*, supra. Once this prima facie case is established the burden of proof then shifts to the employer. The employer must prove that the practice which discriminates is a business necessity. That is, that it is necessary for the safe and efficient performance of the job itself. *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).

The instant case was tried under the theory of disparate impact. Jillyn B. Smith, a female, had an Arizona teaching certificate and was qualified to teach high school biology. She filed an application with the school district to teach a science course and in particular, biology. While her application was pending, Dr. Harold Taylor, a full-time biology teacher at Amphitheater High School, resigned effective at the end of the 1977–78 academic year.

During the 1977–78 academic year, Jake Rowden, who taught two science classes and also had an addendum contract as an assistant varsity football coach, notified the school that he intended to resign. It has been a practice in the school district and in other school districts within the State of Arizona and nationwide to combine basic academic teaching contracts with addendum contracts that concern extra curricular, non-classroom activities. A basic contract for a certified school teacher concerns the teaching of academic subjects such as English, mathematics, history, biology, etc. A full-time contract would constitute teaching five class periods per day. An addendum contract relates to extracurricular activities such as football, baseball, tennis, debate, creative marketing, etc. Each contract, either basic or addendum, is signed and remunerated separately.

During the 1978–79 academic year, a biology teacher was paid from $12,000 to $13,000 at Amphitheater High School. The addendum contracts for working at extra-

curricular activities such as assistant varsity football coach paid anywhere from $1,500 to $1,900. In order for a person to be employed as an assistant varsity football coach that person must either have a teaching certificate or be a graduate student working toward certification.

In the instant case, the two vacancies at Amphitheater High School, that for the biology teacher and that for assistant football coach, were coupled and advertised as a single position that is, the school district advertised for a biology teacher who had the ability to coach football. Eighty-five applications were reviewed for the biology teacher-football coach position. Fifty-four of the applicants were men and thirty-one were women. Out of these 85 applicants, ten, all men, made the "finals." None of the female applicants had indicated background in or willingness to coach football. Some of the male applicants did not make it to the "finals" because they also did not have the football coaching experience. Of the final ten, the school district selected one Michael Cox, a person with previous experience teaching biology and previous experience in coaching football.

Plaintiff Jillyn B. Smith contends that this practice of coupling academic contracts with addendum contracts to coach football had a disparate impact on women applicants for academic teaching positions. We agree.

Rule 52(a), Arizona Rules of Civil Procedure, 16 A.R.S., states in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." A finding can be clearly erroneous when a reviewing court, on the entire evidence, is "left with the definite and firm conviction that a mistake has been committed." *Merryweather v. Pendleton,* 91 Ariz. 334, 338, 372 P.2d 335 (1962). In addition, the findings of the trial court are clearly erroneous when they are induced by an erroneous view of the law. *Merryweather v. Pendleton,* supra; *Tuab Mineral Corp. v. Anderson,* 3 Ariz.App. 512, 415

P.2d 910 (1966). These rules apply in the case at bar. The trial court made detailed findings of fact and conclusions of law. While they were rather confused the trial court seems to find that as for the prima facie case, plaintiff-intervenor and the Civil Rights Division were unable to produce "any relevant statistical or other evidence that would substantiate a conclusion in either case of discrimination as to plaintiff-intervenor, violation of state law."

In addition the court states that "all applicants for the position of biology teacher/football coach were screened upon the basis of their qualifications and none were excluded on the basis of sex." These two statements show that the court has misconstrued the evidence. To claim that Jillyn Smith was unqualified for the position of biology teacher-football coach because she was unable to coach football begs the question. The question here is whether, with the understanding that women traditionally are unable to coach football, it is legitimate to couple the two jobs, thus preventing women from being able to qualify for the position of biology teacher. As to the practice of coupling the two jobs, it prevented all of the women applicants from qualifying for the position. Plaintiff and plaintiff-intervenor have clearly shown that this policy of coupling the jobs has a disparate impact on women.

The court's statement that plaintiff has failed to provide any relevant statistical evidence asks too much. While clearly here we are dealing with a small group of people, there were only a total of 85 job applicants, the effect of coupling the two jobs is clear. As the United States Supreme Court said in *International Brotherhood of Teamsters v. United States,* supra:

"In any event, fine tuning of the statistics could not have obscured the glaring absence of minority line drivers. As the Court of Appeals remarked, the company's inability to rebut the inference of discrimination, came not from a misuse of statistics but from 'the inexorable

zero'." 431 U.S. at 342, fn. 23, 97 S.Ct. at 1858, fn. 23.

In addition, as the Supreme Court stated in *Dothard v. Rawlinson*, supra:

"The plaintiffs in a case such as this are not required to exhaust every possible source of evidence, if the evidence actually presented on its face conspicuously demonstrates a job requirement's grossly discriminatory impact. If the employer discerns fallacies or deficiencies in the data offered by the plaintiff, he is free to adduce countervailing evidence of his own." 433 U.S. at 331, 97 S.Ct. at 2727.

In this case the district made no effort to rebut the showing that the coupling of contracts did in fact have a disparate impact upon women.

■ That the coupling of the contracts is a standard practice in the district is admitted by all concerned. We find that this practice "demonstrably affects all members of a class in a substantially similar, if not an identical manner." *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir.1981). As the effect of the practice is to exclude women from eligibility for teaching positions which are coupled with football coaching positions, we find plaintiff has established a prima facie case of sex discrimination under the disparate impact theory.

Although the trial court found that plaintiff did not establish a prima facie case, it went on to hold that even if a prima facie case had been established that the defendant school district had established the appropriate defense. The language used by the court, however, shows a fundamental confusion between the defense to a disparate treatment suit and that to a suit filed under the disparate impact theory. The court stated as follows:

"The court also feels that, even if a prima facie case was made under the disparate impact theory, it would be effectively disspelled by articulated, legitimate non-discriminatory reasons which were not pretextual and which demonstrate a valid business necessity which is job-related and has a manifest relationship to efficient production and trustworthy workmanship."

As stated above, the articulation of a legitimate non-discriminatory reason which is not pretextual is related to a disparate treatment suit and does not place the burden of proof on the defendant but leaves the burden of proof on plaintiff to prove that the reason is not pretextual. The language involving the demonstration of a valid business necessity on the other hand refers to the defense to a disparate impact suit. This is the appropriate defense here.

## BUSINESS NECESSITY

■ In disparate impact suits, the burden is placed on the defendant to establish the defense of business necessity and it is a much heavier burden than merely articulating a legitimate non-discriminatory reason for a hiring decision. *Kirby v. Colony Furniture Company*, 613 F.2d 696 (8th Cir.1980); *Smith v. Olin Chemical Corp.*, 555 F.2d 1283 (5th Cir.1977). As the Court in *Smith* states:

"As the cases have developed, once discriminatory effect is shown, the employer must carry a heavy burden of proof to show business 'necessity' for the employment practice." 555 F.2d at 1286.

Business necessity "connotes an irresistible demand" and must "not only *foster* safety and efficiency, but must be *essential* to that goal." (Emphasis in original) *United States v. St. Louis-San Francisco Railway Company*, 464 F.2d 301, 308 (8th Cir. 1972), cert. den., 409 U.S. 1116, 93 S.Ct. 913, 34 L.Ed.2d 700 (1973). In *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971) the Court stated:

"[T]he applicable test is not merely whether there exists a business purpose for adhering to a challenged practice. The test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business. Thus, the business purpose must be sufficiently compelling to override any [discriminatory] impact; the challenged prac-

tice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential [discriminatory] impact." 444 F.2d at 798.

It is not sufficient that the practice is shown to be rationally related to the business. *Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245, 249 (10th Cir.1970), cert. den. 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971). It is also insufficient that the practice is shown to serve "legitimate management functions". *Muller v. United States Steel Corp.*, 509 F.2d 923, 928 (10th Cir.1975), cert. den. 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

■ In determining whether business necessity has been established it is important to define clearly exactly which practice must be necessary to the safe and efficient operation as a business. Appellee claims that it is necessary that a football coach be experienced and have a football coaching background to safely and efficiently coach high school football. This is not at issue. No one is arguing with the fact that it is necessary to have experienced football coaches to prevent injury. The question in this case is whether it is necessary to the safe and efficient operation of the Amphitheater School District that academic teaching contracts be tied to football coaching addendum contracts despite the fact that when this is done there is a discriminatory impact upon the women applicants for the academic teaching positions. Keeping this narrow question in mind, it is clear that Amphitheater School District has not carried its burden of proving that a business necessity exists which requires them to couple these contracts.

The evidence shows that it was and is the district's policy to couple teaching and extra curricular activity contracts for hiring purposes to the extent that it is possible and that the district attempted to fill the addendum contract positions by themselves only if it were not feasible to couple them with classroom teaching openings. The persons responsible for making hiring decisions never saw the applications of persons who were not qualified for both of the positions announced in the job description. No evidence was presented that less discriminatory methods of hiring had been attempted and had failed and there was in fact substantial evidence that hiring alternatives were available and were not used.

It is important to note what is not being decided in this case. We do not hold that it is not possible for Amphitheater Unified School District to show business necessity in the practice of coupling addendum and academic contracts. We hold merely that they have in this instance failed to do so.

The judgment is reversed and the superior court is ordered to enter judgment in favor of appellant, and to make a determination of damages and other appropriate relief in accordance with this opinion.

HATHAWAY and BIRDSALL, JJ., concur.