76 F.3d 386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard L. GASTINEAU, Plaintiff-Appellant,
v.
HOME DEPOT USA, INC., an Ohio corporation, Beth Burzloff, a
single woman, Defendants-Appellees.
 No. 94-16831.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 9, 1996.*
Decided Jan. 18, 1996.
 
 Before: LAY,** CHOY, and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Richard Gastineau appeals the district court's grant of summary judgment in favor of Home Depot USA, Inc. and Beth Burzloff. He claims breach of contract, intentional interference with contract, and sexual harassment. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 BACKGROUND
 
 3
 In October 1988, Gastineau began working as a temporary laborer at a Home Depot store in Tucson, Arizona. Approximately three weeks later, he was hired as a full-time salesman. At that time, he signed two forms--an employment application and an Acknowledgment Form--that defined his status as an at-will employee. ER, tab 3, pg 69, 68.[1] Home Depot ultimately assigned him to a supervisory position where he worked until he was demoted back to the sales floor in November 1990. He remained in sales until his termination in April 1991.
 
 
 4
 When Gastineau joined Home Depot, Appellee Beth Burzloff already worked at the store as the head of the service desk area. In 1990, Burzloff was promoted to a position supervising employees working in the front of the store. In this position, she supervised Gastineau when he worked in that area.
 
 
 5
 Gastineau and Burzloff began dating in 1989. They began living together sometime afterwards, and eventually had a daughter together. Gastineau characterized their relationship, which ended in October 1990, as "stormy." ER, tab 3, pg. 35. A number of police reports support this contention. The reports, generally filed by Burzloff, contained allegations that Gastineau assaulted Burzloff, restrained her, entered her apartment without permission, and verbally assaulted her in public places. Gastineau contends, however, that Burzloff was often the instigator of these incidents, portraying her as jealous and prone to violence.
 
 
 6
 Gastineau's job performance at Home Depot was also quite turbulent. Beginning in January of 1990 until his termination in April of 1991, Gastineau received 10 disciplinary notices.[2] They were as follows:
 
 
 7
 Date Reason for Discipline Record Excerpt
01/19/90 overuse of overtime ER, tab 3, 58
10/23/90 bringing children to work and using abusive language ER, tab 3, 60
 with coworker
10/30/90 leaving work early ER, tab 3, 59
12/03/90 arguing with Burzloff in front of customers ER, tab 3, 61
03/02/91 punching and breaking a glass panel on a vending ER, tab 3, 62
 machine
03/02/91 leaving work early ER, tab 3, 63
03/03/91 failure to attend store meeting ER, tab 3, 64
03/06/91 absence ER, tab 3, 65
03/23/91 leaving work early ER, tab 3, 66
04/11/91 tardy by nine minutes ER, tab 3, 67
 
 
 8
 On April 11, 1991, Gastineau arrived at work nine minutes late. Following a notice of discipline, his employment was terminated.
 
 
 9
 On January 11, 1993, Gastineau filed a Complaint in Pima County Superior Court. He alleged breach of contract, wrongful termination, breach of implied covenant of good faith and fair dealing,[3] intentional interference with contract, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Arizona Civil Rights Act, A.R.S. § 41-1463(B). ER, tab 1, pg 3-6. The case was removed to the United States District Court for the District of Arizona on April 27, 1993. On September 13, 1994, the district court granted Defendant's Motion for Summary Judgment. Gastineau filed a timely Notice of Appeal.
 
 STANDARD OF REVIEW
 
 10
 We review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), petition for cert. filed, 64 U.S.L.W. 3271 (U.S. Sept. 20, 1995) (No. 95-481). We view the evidence in the light most favorable to the non-moving party to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 DISCUSSION
 
 11
 1. Breach of Contract.
 
 
 12
 Gastineau's employment contract with Home Depot allowed termination by either party "at-will." When he began working for Home Depot he signed an employment application that indicated that the employment contract was subject to termination at any time and for any reason by either party. ER, tab 3, pg 69. He also signed two "Acknowledgment Forms" that restated the at-will nature of his employment contract. ER, tab 3, pp 78, 79. As a result, his termination would constitute a breach only if the contract had been modified. Gastineau argues that a genuine issue of material fact remains as to whether his contract was modified by Home Depot's policy manual, course of conduct, or oral representations. He also argues that a genuine issue of material fact remains as to whether his termination constituted a breach of contract.
 
 
 13
 Gastineau argues that the language of Home Depot's policy manual modified his employment contract to preclude his immediate termination for a single instance of tardiness.[4] It is undisputed, however, that the employment application that Gastineau signed included the following language:
 
 
 14
 [Company] rules and regulations do not create a contract between me and the company or otherwise restrict the right of the Company to terminate my employment. I understand and agree any handbook I may receive will not constitute an employment contract.
 
 
 15
 ER, tab 3, pg 69. This language was repeated in two other "Acknowledgment Forms" signed by Gastineau--one that accompanied the Handbook on October 31, 1988, and another signed on January 21, 1991. ER, tab 3, pg 78-79. Given these facts, we conclude that no reasonable trier of fact could find for Gastineau on this issue.
 
 
 16
 Yet Gastineau relies on Loffa v. Intel Corp., 153 Ariz. 539, 738 P.2d 1146 (App.1987) to argue that the issue of "whether a personnel manual has modified the employment relationship is a question of fact" to be determined by the jury. Id. at 543. In Intel, the employment contract stated: "this Agreement ... does not in any way restrict my right or the right of Intel to terminate my employment." Intel, 153 Ariz. at 544, 738 P.2d at 1151. The court found that this language alone was insufficient to remove from the jury the issue of whether Intel's encouraging its employees to rely on its disciplinary procedures modified the at-will employment relationship. In Intel, the court thought that the above quoted language did not clearly limit an at-will employee's reasonable expectation of job security. But in Intel the court stressed that "issuing [a personnel manual] with clear language of limitation, instill[s] no reasonable expectations of job security and do[es] not give employees any reason to rely on representations in the manual." 153 Ariz. at 543, 738 P.2d at 1150 (citations omitted) (emphasis added). This is precisely the situation before us. Here, Gastineau signed several forms that clearly acknowledged that the policy manual did not modify his employment relationship with Home Depot. When Gastineau received the Employee Handbook, he also received and signed an Acknowledgment form that contained the following clear language in capital letters: "NEITHER THIS HANDBOOK NOR ANY PROVISION OF THIS HANDBOOK IS AN EMPLOYMENT CONTRACT OR ANY OTHER KIND OF CONTRACT." ER, tab 3, pg 78. This disclaimer constitutes "clear language of limitation" under Intel. The handbook therefore did not modify Gastineau's employment contract.
 
 
 17
 Gastineau also argues that Home Depot's oral representations and course of conduct modified his employment contract. Gastineau claims that Home Depot informed him that it had a policy of giving three warnings before discharging an employee for tardiness. But the employment application and one of the acknowledgment forms he signed also contained the following language: "I further understand that [the at-will] condition can only be altered by a written contract of employment ... signed by both me and the President of the Company." Id. In light of this clear language, the trial court properly found that no reasonable trier of fact could have found Gastineau's contract had been modified by either oral representations or course of conduct.
 
 
 18
 In sum, we affirm the trial court's order of summary judgment on the breach of contract claim because Gastineau read and signed three forms that clearly and explicitly stated that his employment contract was not modified by the Employee Handbook and was otherwise modifiable only by a written agreement signed by the president of Home Depot. Given the facts in this case, no reasonable trier of fact could have found for plaintiff on this claim.
 
 
 19
 2. Intentional Interference with Contract.
 
 
 20
 Gastineau asserts that a material factual dispute remains as to whether Burzloff intentionally interfered with his contract with Home Depot. Under Arizona law, the elements of a intentional interference with contract tort action are:
 
 
 21
 (1) [t]he existence of a valid contractual relationship ...; (2) knowledge of the relationship ...; (3) intentional interference inducing or causing a breach or termination of the relationship ...; and (4) resultant damage to the party whose relationship ... has been disrupted.
 
 
 22
 Wagenseller v. Scottsdale Memorial Hosp., 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (Ariz.1985) (en banc). But to prevail, a plaintiff must also show that the interference was "improper." Id. at 388. Whether a particular action is improper is determined "by weighing the social importance of the interest the defendant seeks to advance against the interest invaded." Snow v. Western Sav. & Loan Assn., 152 Ariz. 27, 34, 730 P.2d 204, 212 (Ariz.1986).
 
 
 23
 The district court held that Gastineau did not meet the first element of the intentional interference tort, the existence of a valid contract. It ruled that the intentional interference claim failed because "plaintiff was an employee at-will and had no employment contract." ER, tab 10, pg 175. This legal conclusion is incorrect. To the contrary, an at-will employment contract does constitute a valid contract for purposes of the intentional interference tort. Wagenseller, 147 Ariz. at 386-87, 710 P.2d at 1041-42 ("a cause of action in tort is available to a party to any contract, at-will or otherwise, when a third party improperly and intentionally interferes with the performance of that contract"). Nevertheless, this error was harmless because even under the correct legal analysis the claim should have been dismissed.
 
 
 24
 Burzloff's actions arguably met the first four elements of this tort. At least some evidence shows that she intentionally sought to have Gastineau terminated. She was aware of his contract and he was eventually fired. However, based on the undisputed facts before us, her actions were not improper, and thus do not meet the final element. Gastineau asserts that Burzloff repeatedly complained to other managerial staff about the deteriorating quality of their relationship. He further asserts that she was seen leaving the store manager's office immediately before his termination.
 
 
 25
 Gastineau's disciplinary record, however, reflects a pattern of disturbing conflicts with Burzloff during working hours. Gastineau's conduct was lewd and abusive. For example, he yelled in the Home Depot store: "couldn't [a co-worker] fuckin' hear anymore" when the co-worker tried to calm his crying child at the behest of Burzloff. ER, tab 3, pg 60. He also confronted Burzloff in front of customers, "exchanging words" with her. ER, tab 3, pg 61. Although Gastineau attempts to lay the blame for these conflicts on Burzloff, he has failed to support this contention with facts that we could construe in his favor. The disciplinary actions listed above strongly indicate that Gastineau's behavior was erratic and disruptive. Given his volatile past behavior, including punching and breaking the glass of a vending machine, it was not improper for Burzloff to complain to other managers, or even to ask that Gastineau be terminated. As a store supervisor, Burzloff had a managerial responsibility to assure that customers would not be exposed to inter-employee conflicts, not to mention her interest in her own physical and emotional safety. On these facts, no reasonable jury could have found that Burzloff's interference with Gastineau's contract was improper.
 
 
 26
 The trial court, after erroneously finding that no contract existed, speculated that Burzloff's actions might nonetheless have constituted interference with a "prospective advantage of economic benefit." This tort, however, also requires that the interference be improper. Ulan v. Vend-A-Coin, Inc., 27 Ariz.App. 713, 717, 558 P.2d 741, 745 (Ariz.Ct.App.1977) (interference "is not actionable unless the purpose of the actor was solely to produce damage, or unless the means employed were dishonest or unfair." (citations omitted)). As discussed above, Burzloff's actions were not improper. Therefore, this claim also fails.
 
 
 27
 Because we find that Gastineau did not have an actionable claim under either tort theory, we do not address the issue of whether the doctrine of after acquired evidence would have prevented recovery.
 
 
 28
 3. Title VII.
 
 
 29
 Gastineau contends that his termination constituted sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Arizona Civil Rights Act, A.R.S. § 41-1463(B), (collectively "Title VII").[5] This violation, he claims, also constituted a breach of contract and wrongful termination.
 
 
 30
 Title VII of the Civil Rights Act of 1964 forbids an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment constitutes sex discrimination in violation of Title VII. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66-67 (1986).
 
 
 31
 Gastineau alleges two types of sexual harassment--quid pro quo and "hostile work environment." In this circuit, to prove quid pro quo harassment Gastineau must show that his employer "explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon [his] acceptance of sexual conduct." Nichols v. Frank, 42 F.3d 503, 511 (9th Cir.1994). Gastineau argues that his acceptance or rejection of the relationship with Burzloff was the underlying cause of his numerous disciplinary actions and his eventual termination. He points to the correlation in time between his conflicts with Burzloff and his subsequent disciplinary actions. Other than this apparent proximity in time, however, he does not offer any proof that the disciplinary actions were erroneous or pretextual. He further fails to sufficiently tie the disciplinary actions to his alleged refusal to continue his relationship with Burzloff. The written disciplinary actions reflect a serious pattern of misconduct in the workplace, ranging from leaving work early without authorization to swearing at co-workers to punching and breaking the glass panel of a vending machine in the employee break room. In light of this conduct, whether the timing of the disciplinary actions was simply coincidental or whether his deteriorating relationship with Burzloff adversely affected his performance at work, the trial judge properly ruled that no reasonable jury could have found for Gastineau on this issue.
 
 
 32
 To show that he was subject to hostile environment harassment, Gastineau must have offered proof that he was subject to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature "which a reasonable [man] would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Ellison v. Brady, 924 F.2d 872, 875-76, 879 (9th Cir.1991). Gastineau, also contends that he was subject to unwelcome pressure to continue his sexual relationship with Burzloff, that his treatment at work was based on his acquiescence to such a relationship, and that he was eventually terminated for his refusal to continue that relationship. He has, however, failed to establish either that Burzloff was indeed pressuring him into continuing his relationship with her or that his discipline and termination were in response to his refusal to do so. To the contrary, the facts indicate that Gastineau put pressure on Burzloff to remain in the relationship. For instance, a series of police reports filed by Burzloff indicate a pattern of Gastineau putting pressure on Burzloff, rather than the converse. ER, tab 3, pg 43-54. Furthermore, it appears that Burzloff had obtained a restraining order against Gastineau. Id.; ER, tab 3, pg 37-38. Nor has Gastineau indicated that the pressure was so "severe or pervasive" as to create an abusive working environment. The trial court did not therefore err in entering summary judgment on this issue.
 
 
 33
 Gastineau was not subject to sex discrimination in violation of Title VII. Sex discrimination occurs when an employer considers gender as a factor in an employment decision. Price Waterhouse v. Hopkins, 490 U.S. 228, 240-41 (1989). To establish discrimination, Gastineau bears the burden of proof of showing "that gender played a motivating part in" his termination. Id. at 244. He has failed to meet this burden because he has not proffered any evidence showing that his termination was motivated by his gender. When, during his deposition, he was asked what facts he had to support his claim that his termination was discriminatory based upon sex, he responded,
 
 
 34
 The only facts, or the reason I believe that is, your talking about a company, first of all, that's male oriented, as far as that goes. A store that was--had all male managers in it, and assistant managers. And we got Beth running to these people, having people feeling sorry for her being the female. She is a tiny one, the little one. So it must be all Rick's fault--that type thing.
 
 
 35
 ER, tab 3, pg 40. This response, along with Appellant's Brief, fails to show how Gastineau's gender influenced the decision to terminate him. To the contrary, it is more probable that Gastineau was discharged for the reason he voiced when asked why he thought a "male-oriented store" would side with a female, rather than him: "Only for the reason that--I don't know. She's been there longer than me...." Id. Because Gastineau failed to show evidence that his termination was motivated by his gender, the trial court properly granted summary judgment.
 
 
 36
 Finally, because Gastineau was not subject to sexual harassment or discrimination in violation of Title VII, his claims that he was wrongfully terminated and that his contract was breached by such a violation are without merit. The trial court did not err in granting summary judgment on those claims.
 
 CONCLUSION
 
 37
 The trial court properly granted summary judgment for defendants under both Arizona tort law and Arizona and Federal sex discrimination law. No reasonable trier of fact could have found for Gastineau. AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 "ER" refers to Excerpt of Record, "Tab" is the tab number of the document in the Excerpt of Record, and the page numbers are the number handwritten in the lower right hand corners of the documents
 
 
 [2]
 Gastineau notes that 9 of the 10 disciplinary actions came after he broke off his relationship with Burzloff in October 1990. His demotion from supervisor to sales came in November 1990, just one month after he ended the relationship
 
 
 [3]
 The claim for breach of implied covenant of good faith and fair dealing was dismissed pursuant to stipulation of the parties. ER, tab 10, pg 172
 
 
 [4]
 The policy manual contained two sections that are relevant to this argument. The first, under the "Tardiness" category, stated that "continued [tardiness] will result in disciplinary action. Your future with the company involves your dependability." ER, Tab 5, pg 113. The second, under the "Safety Rules" category, stated that "[w]illful violation of any rule that endangers the safety of any individual, employee, or customer is grounds for immediate discharge." Id. Gastineau claims that the difference in the wording of the two sections modified the at-will nature of the employment contract to preclude his immediate termination for tardiness
 
 
 [5]
 Because the Arizona Civil Rights Act contains the principal provisions of Title VII, it is interpreted using Title VII case law. Civil Rights Div. v. Superior Court, 146 Ariz. 419, 706 P.2d 745 (Ariz.App.1985) Broomfield v. Lundell, 159 Ariz 349, 352, 767 P.2d 697, 700 (Ariz.App.1988)