Rene MANUEL MARMOLEJO, Plaintiff,

v.

BIRDAIR, INC., Defendant.

No. 96–CV–73H.

United States District Court,
W.D. New York.

April 10, 1998.

---

William Grande, Law Office of William E. Grande, Kenmore, NY, Evan Haglund, Law Offices of Evan Haglund, Phoenix, AZ, for Plaintiff.

James Paul Domagalski, Kellie Marie Ulrich, Saperston & Day, P.C., Buffalo, NY, for Defendant.

### DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment. Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendant's motion is granted.

### *BACKGROUND*

On April 19, 1995, plaintiff filed this action in the United States District Court for the District of Arizona seeking damages, attorneys' fees and costs under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act

of 1871, 42 U.S.C. §§ 1981 & 1988. On January 3, 1996, United States District Judge Roslyn O. Silver transferred the case to this court on the basis of Title VII's venue provision, 42 U.S.C. § 2000e–5(f)(3) (Item 2).[1]

The undisputed facts are as follows.[2] Defendant Birdair, Inc. is a construction company with its principal place of business in Buffalo, New York. According to the affidavit of Birdair's President Jon Duncan, Birdair is a wholly-owned subsidiary of Taiyo Kogyo Corporation, a Japanese entity. Birdair is in the business of constructing tension membrane structures and air-supported structures in stadiums, retail facilities, theaters and commercial buildings throughout the world (*see* Item 38, Duncan Aff., ¶¶ 3–4).

Plaintiff is of Hispanic national origin. He was hired by Birdair in 1987, and was promoted in 1988 to the position of "site superintendent." During the course of his employment with Birdair, plaintiff worked on several construction projects, including the Georgia Dome in Atlanta, Georgia; the Suncoast Dome in Tampa, Florida; the Olympic Stadium in Rome, Italy; and the airport in Denver, Colorado (Item 1, ¶¶ 10–15).

In June, 1993, Birdair instituted a "Superintendent Review" program for evaluation of the performance of its site superintendents for the purposes of promotions and salary increases (*see* Item 38, Ex. G). The evaluations were also utilized by Birdair to determine "layoff status" for site superintendents during work slowdowns necessitating reductions in force, in accordance with Birdair's "Construction Supervisor Policy" (*see* Item 38, Ex. A, ¶ 10).

In November, 1993, seven of Birdair's managers and consultants evaluated eleven site superintendents, including plaintiff, ranking their performance level on a scale of one (unacceptable) to five (exceptional) (Item 38, Ex. H). The superintendents were "ranked for [the] purpose of determining salary increases and layoffs in the event of a reduction in the workload" (*id.*). Of the eleven superintendents ranked, plaintiff was ranked last, with an average performance level of 1.43 (*id.*).

On March 15, 1994, plaintiff signed an employment agreement with Birdair. Paragraph 6(b) of the agreement provided:

> The Company's decision to place an Employee who is a Construction Supervisor on layoff status, as contemplated by the Company's Construction Supervisor Policy, as it may be amended or revised from time to time, shall not be deemed termination of such Employee's employment by the Company.

(Item 38, Ex. B).

On June 14, 1994, Birdair's Human Resource Administrator Eileen Dunn wrote

1. 42 U.S.C. § 2000e–5(f)(3) provides:

 Each United States district court and each United States court of place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment action is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

2. Plaintiff has not responded to defendant's summary judgment motion, nor did plaintiff or his counsel appear at oral argument, as directed by this court's order dated January 27, 1998 (Item 35). Fed.R.Civ.P. 56(e) provides as follows:

 > When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

 In addition, defendant has submitted a "Statement of Uncontested Material Facts" (Item 40) pursuant to Rule 56 of the Local Rules of Civil Procedure for the Western District of New York. Local Rule 56 provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."

plaintiff a letter informing him that he was "considered on layoff" as of June 6, 1994, due to a reduction in the work force necessitated by lack of work (Item 38, Ex. C). Birdair also placed four other site superintendents, all of whom were Caucasian, on layoff status as a result of the work slowdown during the summer of 1994 (Item 38, Duncan Aff., ¶ 11).

On October 24, 1994, Project Manager Kenneth H. Gough wrote plaintiff a letter advising him that Birdair expected the "downturn in [its] business ... to continue through much of Fiscal Year 1995" and that management had decided to delay all annual salary adjustments (Item 38, Ex. D). Mr. Gough also stated in his letter that Birdair was pursuing several projects and was examining ways of reducing costs, and that, "[a]s projects are booked and begin to generate revenue, I will continue to keep you advised as to the condition of the business" (*id.*).

On November 21, 1994, plaintiff wrote to Mr. Duncan (who was then Senior Vice President for Operations) advising him that he was resigning his employment with the company (Item 38, Ex. E). Plaintiff stated in his letter that, despite several work-related injuries, he never took time off from a project or relied on workers' compensation, yet he had not received any work from Birdair since May, 1994. He also stated that he had made several unsuccessful attempts to contact Mr. Duncan about a raise, but instead Mr. Duncan accused him of stealing from the company and denied him bonuses due for his work on jobs in Atlanta and Ft. Worth, Texas. Plaintiff stated, "[u]nder these conditions I am forced to make this severe decision knowing from the past your comments, such as Denver when you laid me off and stated 'if you don't like it you could go find another job' " (*id.*).

Meanwhile, on September 8, 1994, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") in which he claimed that Birdair discriminated against him because of his national origin, in violation of Title VII, when it denied him a pay increase in November, 1993 and laid him off in June, 1994 (Item 1, Ex. 1). Plaintiff also filed with the EEOC an additional, undated and unsigned charge claiming that on September 23, 1994, he was denied a bonus for completed work, and was informed by Mr. Duncan that he would not receive the bonus because he had filed the previous EEOC charge (*id.*, Ex. 2). On January 23 and 25, 1995, the EEOC sent plaintiff "Notice of Right to Sue" letters advising plaintiff that it would not be able to complete its processing of plaintiff's discrimination charges within 180 days of filing, and that it was terminating its investigation (Item 1, Ex. 3).

In his complaint, plaintiff alleges that in the spring of 1993, while working on the Denver airport project, plaintiff attended a meeting of site superintendents at which "lead superintendent" Robert Feierabend (spelled "Fierden" in the complaint) had an argument with Quality Control Manager Bruce Mathews. According to the complaint, Mr. Feierabend shouted at Mr. Mathews to "get his 'f____ black ass and his f____ papers out of the office' " (Item 1, ¶ 16). Mr. Feierabend then "immediately terminated [Mr. Mathews'] employment with Birdair" (*id.*). Plaintiff alleges that Mr. Feierabend often used racial slurs, and on several occasions had referred to plaintiff as a " 'f____ Mexican' and a 'wetback' " (*id.*, ¶ 17). Plaintiff claims that as he walked out of the meeting, he commented to another superintendent that he thought Mr. Feierabend's treatment of Mr. Mathews was out of line. One week later, he was laid off by Birdair, and "the caliber of [his] work assignments with Birdair diminished notably" (*id.*, ¶ 19).

Defendant moves for summary judgment on the following grounds:

1. Plaintiff has failed to demonstrate a *prima facie* case of employment discrimination;

2. Assuming, *arguendo*, that plaintiff has established a *prima facie* case of discrimination, plaintiff has failed to demonstrate that defendant's reason for the layoff—*i.e.*, reduction in force due to work slowdown, and plaintiff's performance evaluation ranking—was a pretext for discrimination; and,

3. Plaintiff has failed to establish a *prima facie* case of retaliation.

Each of these grounds is discussed in turn below.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra*, 933 F.2d at 167. Stated slightly differently, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994).

Though caution must be exercised in granting summary judgment where motive is genuinely in issue, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact. *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997); *see also Gallo, supra; Goenaga v. March·of Dimes Birth Defects Foundation*, 51 F.3d 14, 19 (2d Cir.1995); *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994). As explained by the Second Circuit in *Gallo:*

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.... It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo, supra.* In this case, the substantive law is Title VII.

### II. Title VII.

Title VII of the Civil Rights Act of 1964 provides:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such

individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). The burden a plaintiff bears in proving a claim under Title VII [3] follows the three step burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as further developed in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under that test, the plaintiff first must establish a *prima facie* case of discrimination. Should the plaintiff meet this *prima facie* burden, the burden then shifts to the defendant to provide a legitimate nondiscriminatory reason or motive for the employment action. Finally, the burden shifts back to the employee to show that the defendant's stated reasons or motives are merely a pretext for discrimination. The plaintiff always bears the ultimate burden of proof. *Hicks, supra* 509 U.S. at 510–511. In order to prevail, the plaintiff must ultimately show that discrimination played a motivating role in, or contributed to, the employer's decision. *Id.* at 514–15; *see also Renz v. Grey Advertising, Inc.*, 135 F.3d 217, 222 (2d Cir.1997); *Cronin v. Aetna Life Insurance Co.*, 46 F.3d 196, 203 (2d Cir.1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.").

### A. *Prima Facie* Case.

Defendant contends that plaintiff has failed to demonstrate *prima facie* discriminatory discharge. In order to establish a *prima facie* case of discriminatory discharge, the plaintiff must show that (1) he belongs to a protected class, (2) he was performing his duties satisfactorily, (3) he was discharged, and (4) his discharge occurred under circumstances giving rise to an inference of discrim-

ination. *See McLee v. Chrysler Corp., supra*, 109 F.3d at 134; *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). The burden that a plaintiff must meet at the *prima facie* stage is *de minimis*. *Cronin v. Aetna Life Insurance Co., supra*, 46 F.3d at 203–04; *Chambers, supra; Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988).

 A "discharge," in satisfaction of the third element of the prima facie case, may be either an actual termination of the plaintiff's employment by the employer or a "constructive" discharge. *See, e.g., Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360 (2d Cir.1993); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987); *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983). To establish a constructive discharge, a plaintiff must show that the employer deliberately made the working conditions so intolerable that the plaintiff was forced into an involuntary resignation. *Stetson, supra; Pena, supra*. As stated by the Second Circuit, "a claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Kader v. Paper Software, Inc.*, 111 F.3d 337, 341 (2d Cir.1997) (quoting *Stetson, supra*, 995 F.2d at 361 (finding no claim for constructive discharge where employee was dissatisfied with compensation, assignments, and evaluations, but rank and salary were never reduced); *see also Pena, supra*, 702 F.2d at 324–26 (no constructive discharge where employee was dissatisfied with nature of work assignments and change in responsibilities but had experienced no loss of pay or change in title)).

 In this case, the evidence is insufficient as a matter of law to establish construc-

---

**3.** The same analysis applies to employment discrimination claims brought under 42 U.S.C. § 1981 and the Arizona Civil Rights Law. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir.1994); *Martin v. Citibank*, 762 F.2d 212, 216 (2d Cir.1985); *Bernstein v. Aetna Life & Casualty*, 843 F.2d 359, 364 (9th Cir.1988); *Civil Rights Division of the Arizona Dept. of Law v. Superior Court of the State of Arizona*, 146 Ariz. 419, 424, 706 P.2d 745, 750 (Ariz.Ct.App.1985).

tive discharge. First of all, as explained in the employment agreement entered between plaintiff and Birdair, plaintiffs "layoff" due to a downturn in business in 1994 was not considered by Birdair to be a termination of plaintiffs employment. Indeed, Birdair advised plaintiff in October, 1994, that it was pursuing new projects, and that plaintiff should be patient with respect to his return to work.

In addition, the proof does not establish conditions of employment so intolerable that a reasonable person in plaintiff's shoes would have been compelled to resign. Plaintiff claims that Robert Feierabend made racially derogatory remarks to plaintiff on several occasions. Plaintiff also claims that he witnessed Feierabend make racially derogatory remarks to Bruce Mathews, that Feierabend fired Mathews, and that plaintiffs job assignments diminished after he commented to another superintendent that he thought Feierabend's conduct toward Mathews was out of line. However, it is not disputed that Feierabend held the same position with Birdair that plaintiff did—*i.e.,* site superintendent—and that Feierabend had no decisionmaking authority as to either plaintiffs or Mathews' employment status. *See, e.g., McCarthy v. Kemper Life Insurance Companies,* 924 F.2d 683, 686 (7th Cir.1991) (unsupported allegations of derogatory remarks, made by coworker with no decisionmaking authority, do not constitute evidence of discriminatory discharge) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (statements by non-decisionmakers or statements by decisionmakers unrelated to decisional process itself insufficient to satisfy plaintiffs *prima facie* burden) (O'Connor, J., concurring)).

■ Even if this evidence could be considered sufficient to establish intolerable conditions of employment compelling plaintiff to resign, there is no proof in the record of circumstances giving rise to an inference of discrimination. As to this element of the *prima facie* showing, the Second Circuit has described the appropriate summary judgment inquiry as follows:

Since the court, in deciding a motion for summary judgment, is not to resolve issues

of fact, its determination with respect to the circumstances that give rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.

*McLee v. Chrysler Corp., supra,* 109 F.3d at 135; *see also Cronin v. Aetna Life Insurance Co., supra,* 46 F.3d at 204; *Chambers v. TRM Copy Centers Corp., supra,* 43 F.3d at 38.

This requirement may be satisfied in a variety of ways. *Chertkova v. Connecticut General Life Insurance Co.,* 92 F.3d 81, 91 (2d Cir.1996). For example, the circumstances that give rise to an inference of discriminatory motive may include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, or preferential treatment given to employees outside the protected class. *Id.* (citing *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992); *Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1993)).

As discussed above, plaintiff has not alleged—much less proffered admissible evidence tending to show—that any ethnically derogatory remarks were made by Birdair employees having decisionmaking authority over plaintiff's employment status. Nor has plaintiff alleged that Birdair decisionmakers were made aware of the alleged remarks made by plaintiffs coworker. *See, e.g., Karibian v. Columbia University,* 14 F.3d 773, 779 (2d Cir.) (employer not liable for discriminatory harassment perpetrated by plaintiff's co-workers unless employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it), *cert. denied,* 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994); *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992) (same).

■ In addition, the undisputed record shows that Birdair placed four other site superintendents, all of whom were Caucasian, on layoff status as a result of the work slowdown it faced during the summer of 1994. In light of this evidence of similar

treatment of employees outside the protected class, in accordance with Birdair's policy for reducing its supervisory work force during periods of decreased work, I find that plaintiff has failed to show that his discharge took place under "circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *McLee v. Chrysler Corp., supra,* 109 F.3d at 135.

Accordingly, plaintiff has failed to demonstrate a *prima facie* case of employment discrimination.

### B. Pretext.

Defendant also moves for summary judgment on the ground that, assuming *arguendo* that plaintiff has met his *prima facie* burden, the record clearly establishes that (1) defendant had a legitimate, non-discriminatory reason for placing plaintiff on layoff status, and (2) plaintiff has failed to show that defendant's reason was a pretext for discrimination.

■ I agree that defendant's proffered reason for placing plaintiff on layoff status in June, 1994, is both legitimate and non-discriminatory. As stated by Mr. Duncan in his affidavit, plaintiff's layoff "was based on the fact that he performed at a lower level than other Site Superintendents and that there was an economic downturn in Birdair's business which required layoffs" (Item 38, Duncan Aff., ¶ 46). Accordingly, I find that the burden shifts back to plaintiff to establish "that intentional discrimination, rather than the explanation offered by the employer, was the true reason for the termination." *Viola v. Philips Medical Systems of North America,* 42 F.3d 712, 717 (2d Cir.1994) (citing *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 510–511).

As stated by the Second Circuit in *Gallo,* "[w]hat this means in the summary judgment context is that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential*

*Residential Services, supra,* 22 F.3d at 1225. To defeat a properly supported motion for summary judgment, the plaintiff must "produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's [national origin] was the real reason for the discharge." *Woroski v. Nashua Corp., supra,* 31 F.3d at 110.

■ Plaintiff has not come forward with any evidence to show that he performed at a level equal to or higher than other site superintendents, or that there was not a downturn in Birdair's business in 1994. In addition, as discussed above, plaintiff's unsupported allegation that a coworker made occasional derogatory remarks is insufficient to create a triable issue of fact as to the legitimacy of the employer's proffered reasons for the action it took. *See Price Waterhouse v. Hopkins, supra,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268; *see also Hong v. Children's Mem. Hosp.,* 993 F.2d 1257, 1266 (7th Cir.1993) ("Evidence of a supervisor's occasional or sporadic use of a slur directed at an employee's race, ethnicity, or national origin is generally not enough to support a claim under Title VII."), *cert. denied,* 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994), *quoted in Coleman v. Prudential Relocation,* 975 F.Supp. 234, 243 (W.D.N.Y. 1997) (Larimer, C.J.).

In short, no admissible evidence has been produced by plaintiff to support a rational finding that Birdair's reasons for placing plaintiff on layoff status in June of 1994 were false, or that plaintiff's national origin was the true reason. Accordingly, summary judgment in favor of defendant is appropriate dismissing plaintiff's discriminatory discharge claim.

### C. Retaliation.

Plaintiff also claims that defendant withheld bonus payments, due for his work on projects in Atlanta, Georgia and Ft. Worth, Texas, in retaliation for his filing charges with the EEOC. However, the record before the court clearly establishes that plaintiff was paid bonuses for those projects when the funds became available following payment in

full by the owner (*see* Item 38, Duncan Aff., ¶¶ 49–54 & Exs. L, M). Accordingly, defendant is entitled to summary judgment dismissing plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment **(Item 36)** is granted, and the case is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendant.

**SO ORDERED.**